STATE v. MELVIN LOUIS BONGA.

153 N. W. (2d) 127.

September 29, 1967—No. 40,407.

---

*C. Paul Jones,* State Public Defender, and *Murray L. Galinson,* Assistant State Public Defender, for appellant.

*Douglas M. Head,* Attorney General, *Gerard Snell,* Solicitor General, *David C. Weinberg,* Special Assistant Attorney General, *William B. Randall,* County Attorney, and *Mentor C. Addicks, Jr.,* Assistant County Attorney, for respondent.

SHERAN, JUSTICE.

Appeal from a district court judgment of conviction.

On November 24, 1965, a judge of the District Court of Ramsey County, sitting without a jury, convicted defendant of simple robbery, Minn. St. 609.24.[1] Defendant appeals on the ground that the evidence compelled the trial court to accept his defense of intoxication.

At about 2 p. m. October 16, 1965, defendant, a 28-year-old man, was released from Ancker Hospital, where he had been receiving treatment for a tubercular condition. That afternoon he, his brother, and a friend consumed a half gallon of wine. At about 4 p. m. defendant went to a bar, where he remained until after dark, drinking beer and vodka. Then he went to another bar. He did not recall what or how much he drank there, but considered himself "real drunk." He did not remember leaving the bar.

A pharmacist testified that at about 9:30 p. m., defendant entered the drug store where the witness was employed. Defendant had his right hand under his shirt. He walked across the front of the store and started down a side aisle, when the witness came up behind him and asked if he could help him. Defendant said, "I want to talk to you." The witness again asked what he wanted, and he said, "Come on in the back. I want to talk to you." The witness again inquired what defendant wanted, and

---

[1] Minn. St. 609.24 provides: "Whoever, knowing he is not entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both."

he said he wanted the witness' money. The witness, who was 5 feet 11½ inches and weighed 225 pounds and a considerably larger man than the 5-foot 9½-inch, 155-pound defendant, complied because he suspected defendant had some type of weapon under his shirt, and suggested that they take the front register first. They proceeded to that register. The witness opened it and told defendant to help himself. Defendant said no, that the witness should put the bills in a paper bag, but leave the change. The witness complied, placing $17 in the bag. Defendant took the bag and backed away to the door. He turned to open the door, but kept glancing back. He could not open the door because he had the bag in one hand and his other hand under his shirt. He pulled his hand from beneath his shirt, opened the door, and left. At this, the witness realized defendant was not armed and started after him. Defendant, who apparently did not know the witness was following him, was walking away. The witness ran out the door and shouted, "Help, thief!" Defendant turned around and looked as if he were going to start running just as the witness grabbed him by the shoulder and neck and laid him down in the sidewalk about 20 feet from the door. The witness had not had much difficulty in catching defendant. Two men and a woman who heard the witness' cry for help came. The men helped the witness hold defendant on the sidewalk while the woman called the police. As they held defendant, defendant offered to return the bag to the witness. Defendant made a slight struggle to escape but, with three people holding him, could not do very much.

A police officer arrived in about 5 minutes. He testified he observed defendant struggling rather weakly to escape the three laymen, but added that defendant made no such attempts after the police arrived. Another squad car arrived. Defendant made derogatory remarks about the police and said he would shoot the policemen if he had a gun. Defendant was placed inside a squad car with a patrolman while the other officer assigned to the car conducted an on-the-scene investigation. The patrolman who was in the squad car testified that defendant kept asking what he was charged with and the patrolman kept answering for suspicion of robbery. Eventually defendant was taken to the police station,

where another patrolman gave him a breathalizer test which indicated .27 percent.

According to defendant's testimony, his recollection of the evening's events resumes at approximately this point. He said he did not remember taking the breathalizer test, but did recall being at the police station, where he made a request that his handcuffs be loosened because they were hurting him.

The testimony directed specifically to the extent of defendant's intoxication was as follows:

Defendant testified, as noted above, as to the amount of liquor he had consumed; that he considered himself "real drunk"; and that he did not recall events occurring between the time he was at the second bar and the time he was at the police station.

The pharmacist testified there was a smell of alcohol on defendant's breath, but that it was moderate, not strong; that neither defendant's walking nor his speech indicated he was intoxicated; but that one could tell he had been drinking—his hair was mussed up and his shirt was out.

The first policeman to arrive testified that he smelled liquor on defendant's breath; that defendant slurred his speech and staggered; and that he considered defendant to be very intoxicated.

The patrolman who sat with defendant in the squad car first testified that he had the opinion at the time that defendant was intoxicated, although he did not recall exactly all the symptoms. He later stated he did not know whether defendant was drunk or not and that the way he determines if a person is drunk is by the breathalizer test.

The patrolman who administered the breathalizer test testified that the test resulted in a reading of .27, which "means he was under the influence of intoxicating liquor"; that .27 percent is a lot of alcohol; and that there is a definite relationship between the amount of alcohol in the blood and the degree of intoxication. He said he also thought defendant was under the influence from defendant's manner of speech, his eyes, and his appearance in walking (he staggered), and that the witness considered defendant intoxicated.

The court, although disapproving the view of the patrolman who sat with defendant in the squad car that sole reliance should be put on the

breathalizer test to determine how intoxicated a person is, took judicial notice of the standards of Minn. St. 169.121,[2] regarding admission of alcohol tests in driving-while-under-the-influence prosecutions.

Defendant attacks as manifestly contrary to the evidence the trial court's finding that defendant was not under such influence of intoxicating liquor as to block out his reason or purpose at the time he held up the drug store. His argument is based upon the testimony of the two policemen that defendant was intoxicated; the manner in which defendant opened the door with his "gun hand"; the way he (even after disclosing he had no gun) merely walked away from the drug store; and the fact that defendant apparently was unaware the pharmacist was following him until the latter shouted.

The trial court emphasized the facts that the pharmacist said defendant was not staggering when he was in the store and that he treated defendant as an ordinary customer rather than throwing him out as a drunk; that defendant talked normally to the pharmacist; that defendant was resourceful enough to have his hand under his shirt in such a way as to indicate he was armed and to ask the pharmacist to put the bills only, and not the change, into the bag; and that (not knowing the pharmacist was after him) he walked away from the store rather than running (which would have drawn attention).

Minn. St. 609.075 provides:

"An act committed while in a state of voluntary intoxication is not less criminal by reason thereof, but when a particular intent or other

---

[2] Minn. St. 169.121, subd. 2, provides in part: "For the purposes of this subdivision:

\* \* \* \* \*

"(c) evidence that there was at the time 0.15 percent or more by weight of alcohol in the person's blood may be admitted as prima facie evidence that the person was under the influence of an alcoholic beverage.

"The foregoing provisions shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not such person was under the influence of an alcoholic beverage \* \* \*. In the event of a breath, saliva or urine test, the percentages above shall be increased by 20 percent."

state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind."

The only reference to a particular state of mind apparent in § 609.24 is that the perpetrator know he is not entitled to the property he takes. We conclude that the evidence sustains the finding that defendant had such knowledge. As noted by the trial court, defendant had the resourcefulness to hold his hand under his shirt in such a way that it appeared he had a gun, which would seem to be the only way he could have induced the pharmacist, a much larger man than himself, to part with the money. Defendant had the presence of mind to reject the pharmacist's suggestion that he help himself to the money, and instead to direct the pharmacist to put the money into a bag, and to direct that only the paper money, and not the change, be placed in the bag. He backed to the door, and, after turning to open it, kept glancing back at the pharmacist. He apparently was about to start running when the pharmacist shouted, "Help, thief!" He offered to return the money. He struggled to escape his captors.

While defendant was no doubt under the influence of the liquor he had consumed, and while his crime was far from artfully executed, we feel that the trial court properly rejected his defense of intoxication.

Affirmed.