**Russell William BANGERT, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. 49371.**

Supreme Court of Minnesota.

July 27, 1979.

542

C. Paul Jones, Public Defender, Evalynn B. Welling, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Craig H. Forsman, Sp. Asst. Atty. Gen., St. Paul, John F. Corbey, County Atty., Mankato, for respondent.

Heard before ROGOSHESKE, YETKA, and WAHL, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

A jury found defendant, Russell William Bangert, guilty of the first-degree murders of Ellen and Robert Evenson, his half sister and her husband. The trial judge sentenced him to two consecutive terms of life imprisonment, with execution stayed on the second sentence and lifetime probation ordered in the event of release on the first sentence. Defendant did not appeal but subsequently sought postconviction relief pursuant to Minn.St. c. 590. The postconviction court denied the petition and, on its own motion, modified the sentence by eliminating the stay of execution and probation on the second life term. The grounds for relief asserted in the postconviction proceeding and again on appeal are that the evidence of premeditation was insufficient; the trial court erred in failing to change the venue on its own motion; and consecutive life sentences are improper under the federal constitution and state law. We affirm the findings of the postconviction court on all issues raised in the petition for postconviction relief but, in the interests of justice, vacate the sentence and remand to the sentencing judge for resentencing.

The bodies of Robert and Ellen Evenson were discovered at their home in Rapidan, Minnesota, in the early afternoon of November 9, 1976. They were lying in bed, each having been shot fatally. Three .22–caliber long rifle cartridges were found near the bedroom doorway. Subsequent autopsies revealed that Robert had died from a single gunshot injury to the head, while Ellen had died from two such injuries. Police found two rifles in the house, tests of which showed that neither had fired the cartridges used in the killings. The couple's car, a 1972 Dodge Dart, was missing. It was located 5 days later in Ocala, Florida, in response to a nationally broadcast missing-vehicle report. Defendant, who had been living with the Evensons, could not be located.

On December 15, 1976, at approximately 11:30 p. m., defendant entered a grocery store in Fort Worth, Texas, browsed momentarily, and left. He returned shortly thereafter, picked up a package of cupcakes, and informed the manager at the checkout counter that he intended to shoplift them. The manager told defendant that he would not permit him to shoplift but that he would give him something to eat if he was hungry. Defendant declined the offer, stating that he desired to be arrested. When asked why, he responded that he was wanted in Minnesota for the murder of his half sister and her husband. The manager then telephoned the police, and defendant awaited their arrival without attempting escape.

Police officers arrived 15 to 20 minutes later. Defendant was fully cooperative, giving them his name, date of birth, and social security number. The officers ran a computer check on the information and then arrested defendant and read him his rights. While transporting defendant to the station, one of the officers questioned him about the murders. Defendant informed them that he had shot Robert and Ellen Evenson while they slept and that he had done so because he "never did like the people" and that he was "afraid" and "needed a reason to get out of there." He further told the officers that he had shot the Evensons with his .22–caliber rifle,

which he had exchanged in Illinois for gas, and that he had taken the Evensons' car and abandoned it in Ocala, Florida.

On December 28, 1976, defendant was charged by indictment with two counts of first-degree murder. He was determined to be competent to stand trial and, on February 4, 1977, a jury found him guilty on both counts of first-degree murder. The trial judge immediately imposed a life sentence for each murder, but ordered a postsentence investigation before determining whether to order concurrent or consecutive sentences. On March 7, 1977, the trial judge ordered that the life sentences be served consecutively, with a stay of execution on the second sentence and probation to commence upon completion of the first sentence.

Defendant filed a petition for postconviction relief on October 27, 1977. The grounds stated were that the evidence of premeditation was insufficient, a change of venue should have been ordered, and consecutive life sentences are unconstitutional. At the hearing on the petition, defendant also challenged the sentences as constituting double punishment, prohibited by Minn.St. 609.035, and subsequently filed an amended petition including that claim. The postconviction court denied relief. It also, on its own motion, amended the sentences by eliminating the stay of execution with probation placed on the second sentence, on the ground that such disposition was beyond the power of the trial court. Defendant appealed to this court.

■ Defendant's contention that the verdicts should be reduced from first- to second-degree murder because the evidence of premeditation introduced at trial was insufficient is without merit. In determining the sufficiency of the evidence, this court must view the evidence in the light most favorable to the jury verdict and decide whether the jury could reasonably have found the defendant guilty of the crime charged. *State v. Whelan,* 291 Minn. 83, 189 N.W.2d 170 (1971).

■ Minn.St. 609.18 defines premeditation as "to consider, plan or prepare * * to commit, the act referred to prior to its commission." Since premeditation involves the actor's state of mind, it cannot usually be proved by direct evidence but must be inferred from circumstances surrounding the homicide. *State v. Merrill,* 274 N.W.2d 99 (Minn.1978); *State v. Gowdy,* 262 Minn. 70, 113 N.W.2d 578 (1962). A "plan" to commit first-degree murder need not be formulated in any specific length of time, and premeditation may be inferred in part from the number of times a weapon is used. *State v. Neumann,* 262 N.W.2d 426 (Minn. 1978); *State v. Martin,* 261 N.W.2d 341 (Minn.1977).

■ The uncontradicted evidence established that defendant fired three shots into the heads of his victims while they were sleeping in their bedroom, causing their deaths shortly thereafter. To do so, he had to procure the rifle from its location in the house, walk down the hallway to the Evensons' bedroom, raise the rifle, take careful aim, and pull the trigger three times. By defendant's own admission, he killed the Evensons because he did not like them and needed an excuse to leave. On these facts, the jury's conclusion that defendant acted with premeditation is reasonable and clearly justified.

Defendant next contends that a new trial is required because the jury had no opportunity to consider certain evidence of intoxication as negating premeditation. At the postconviction hearing, defendant testified that at about 10:30 on the night of the murders he had taken ½ teaspoon of cocaine and smoked four "joints" of marijuana. He stated that after doing so he stayed in his bedroom for awhile, "just thinking." Defendant did not inform his trial counsel of these facts, allegedly because he did not want his father to find out.

■ The state takes the position that the issue is beyond the scope of a postconviction proceeding. We have held that postconviction relief is proper not only where constitutional issues are raised but also upon a showing of violation of state

law. *State v. Knaffla,* 309 Minn. 246, 243 N.W.2d 737 (1976). In *State v. Neumann,* 262 N.W.2d 426 (Minn.1978), we recognized that under state law a state of intoxication at the time of killing properly may be considered in determining whether the accused acted with premeditation. The A. B. A. Standards for Criminal Justice recommend that a postconviction-remedies statute provide relief when "there exists evidence of material facts, not theretofore presented and heard, which require vacation of the conviction or sentence in the interest of justice." A. B. A. Standards for Criminal Justice, Post Conviction Remedies (Approved Draft, 1968) § 2.1. Since defendant was arguably convicted without presentation of a defense available under state law, his claim falls within the scope of the postconviction-remedies statute. We do not mean to imply that a defendant may deliberately and inexcusably fail to raise an issue at trial and subsequently assert it as a ground for postconviction relief. Such a practice constitutes an abuse of process, and we will not entertain claims made under such circumstances. A. B. A. Standards for Criminal Justice, Post Conviction Remedies (Approved Draft, 1968) § 6.1. We find no evidence of abuse here. Defendant was only 18 years old at the time of the offense, he had no prior involvement with the criminal justice system, and he apparently feared his father's response to his admission of drug use. Because we believe that except in unusual circumstances a decision on the merits better serves the purposes of our postconviction-remedies statute than a disposition on procedural grounds, we will address the claim.

 A new trial may be granted when the interests of justice so require or when newly discovered material evidence, which reasonable diligence would not have disclosed prior to trial, comes to light. Rule 26.04, subd. 1(1)5, Rules of Criminal Procedure. Although these provisions are not technically applicable, they present appropriate standards for resolving the issue presented. Whether a defendant's condition of intoxication negates the culpable mental state required for premeditation is normally a question for the jury. The mere fact that a defendant consumed intoxicating substances prior to committing an offense, however, does not raise a presumption that he was incapable of premeditation. *State v. Merrill,* 274 N.W.2d 99 (Minn.1978). Defendant's testimony at the postconviction hearing provided no evidence that his drug use prevented or impaired his ability to premeditate the Evensons' deaths. In fact, his statement that after taking the drugs he sat "thinking" is consistent with a finding of premeditation. Defendant failed to show the materiality of the omitted evidence, and we are not persuaded on this record that the interests of justice require a new trial.

 Defendant also argues that he was denied a fair trial as a result of the trial court's failure to order a change of venue on its own motion. Rule 25.02, subd. 1, Rules of Criminal Procedure, provides that a motion for change of venue may be made by the prosecution or the defense and that the court may raise the issue on its own motion. The test for a change of venue is whether the "dissemination of potentially prejudicial material creates a reasonable likelihood that in the absence of such relief, a fair trial cannot be had." Rule 25.02, subd. 3, Rules of Criminal Procedure. The decision is committed to the discretion of the trial court and is reviewable only for abuse of discretion. *State v. Gilbert,* 268 N.W.2d 576 (Minn.1978); *State v. Ellis,* 271 Minn. 345, 136 N.W.2d 384 (1965). Defendant must show that a real possibility existed that the jury would render a prejudiced or biased verdict. *State v. Hogan,* 297 Minn. 430, 212 N.W.2d 664 (1973).

 The Evenson murders received substantial local publicity. Newspaper clippings reporting the case were introduced at the postconviction hearing. The details of the murders were factually recounted, and defendant was mentioned first as a witness sought for questioning and later as a suspect. The majority of the articles enlisted the public's assistance in locating him. The

only potentially prejudicial publicity was that given the omnibus hearing which related the circumstances of defendant's surrender and his statement that he was "wanted for murder." Defendant's trial counsel testified that, although the jurors had heard of the case, he did not use all his peremptory challenges, because he was satisfied that a fair and impartial jury had been selected. Nothing in the record suggests that the jurors were prejudiced.

■■■ Defendant's remaining arguments relate to his sentence. He first contends that consecutive life sentences constitute cruel and unusual punishment prohibited under U.S.Const. Amend. VIII and Minn. Const. art. 1, § 5. The United States Supreme Court resolved a similar issue in the case of *Schick v. Reed,* 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974). In *Schick,* the President of the United States had commuted the death sentence of a soldier for the murder of an 8-year-old girl to life imprisonment at hard labor without possibility of parole. The supreme court in the majority opinion stated: "The no-parole condition attached to the commutation of his death sentence is similar to sanctions imposed by legislatures such as mandatory minimum sentences or statutes otherwise precluding parole; it does not offend the Constitution." 419 U.S. 267, 95 S.Ct. 385, 42 L.Ed.2d 439. Relying upon *Schick,* the Supreme Court of Wisconsin upheld the constitutionality of five consecutive life terms. *State v. Dean,* 67 Wis.2d 513, 227 N.W.2d 712, certiorari denied, 423 U.S. 1074, 96 S.Ct. 858, 47 L.Ed.2d 84 (1975); accord, *State v. Grimm,* 461 S.W.2d 746 (Mo.1971); *State v. McNally,* 152 Conn. 598, 211 A.2d 162, certiorari denied, 382 U.S. 948, 86 S.Ct. 410, 15 L.Ed.2d 356 (1965); *Chavigny v. State,* 112 So.2d 910 (Fla.App.1959), certiorari denied, 362 U.S. 922, 80 S.Ct. 676, 4 L.Ed.2d 742; see, *Moore v. Cowan,* 560 F.2d 1298 (6 Cir. 1977), certiorari denied, 435 U.S. 929, 98 S.Ct. 1500, 55 L.Ed.2d 525 (1978). Consecutive life sentences, even in extreme cases where multiple terms are imposed, can be no more harsh than the life sentence without possibility of parole upheld in *Schick* against constitutional challenge. In appropriate cases, such sentences serve the valid legislative purpose of protecting the public. We hold, therefore, that the consecutive life sentences imposed upon defendant following his conviction for two first-degree murders violate neither the federal nor state constitution.

■■■ Defendant further contends that the sentencing pattern under Minn.St. 609.-185, which mandates a life sentence for the crime of first-degree murder, denies him due process of law. We recently addressed this issue in *State v. Walker,* 306 Minn. 105, 235 N.W.2d 810, certiorari denied, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1975), and stated:

" * * * Nor does the defendant have a right to a postconviction presentence hearing to show his susceptibility to rehabilitation. While Minn.St. 609.115 gives the trial judge the option of requiring a presentence investigation of persons convicted of felonies not carrying mandatory life sentences, and as part of such investigation requiring that an estimate be made of the prospects of the subject's rehabilitation, no defendant has an absolute right to demand that this procedure be employed. Thus, the contention of a procedural due process violation based on the lack of a hearing on defendant's prospects of rehabilitation is without merit." 306 Minn. 111, 235 N.W.2d 815.

Defendant directs us to no new authorities suggesting that the law has been or should be modified, and we, therefore, reaffirm our earlier holding.

■■■ Defendant next argues that consecutive life sentences constitute double punishment prohibited by Minn.St. 609.035. That statute provides that "if a person's conduct constitutes more than one offense under the laws of this state he may be punished for only one of such offenses * * *." The factors to be evaluated in determining whether multiple violations constitute a single behavioral incident are unity of time, place, and criminal objective. *State v. Johnson,* 273 Minn. 394, 141 N.W.2d 517 (1966). When there are multiple vic-

tims, however, these factors are not conclusive, and the statute is inapplicable so long as the multiple sentences do not result in punishment grossly out of proportion to the defendant's culpability. *State ex rel. Stangvik v. Tahash,* 281 Minn. 353, 161 N.W.2d 667 (1968); see, *State v. Briggs,* 256 N.W.2d 305 (Minn.1977); *State v. Prudhomme,* 303 Minn. 376, 228 N.W.2d 243 (1975). The instant case involved two separate murders intentionally inflicted on two separate victims. We conclude that it was proper to impose separate sentences and that consecutive life sentences in these circumstances are commensurate with culpability and not an exaggeration of defendant's criminality.

■ Defendant also argues that Minn.St. 609.15 precludes a sentencing judge from ordering that life sentences run consecutively. Minn.St. 609.15, subd. 1, provides:

"When separate sentences of imprisonment are imposed on a defendant for two or more crimes * * * the court in the later sentences shall specify whether the sentences shall run concurrently or consecutively."

The statute does not except life sentences from the authority it confers on the sentencing court to determine whether sentences should run concurrently or consecutively. Minn.St. 609.15, subd. 2, provides:

"If the court specifies that the sentence shall run consecutively, the total of the terms of imprisonment imposed, other than a term of imprisonment for life, shall not exceed 40 years."

This provision expressly exempts a life sentence from the statutory maximum on total length of consecutive sentences and is, therefore, inapplicable to this case.

■ Finally, defendant contends that the postconviction court's modification of the original sentence, by removing the stay of execution with probation on the second life sentence, improperly increased its severity. Minn.St. 609.135 provides that a sentencing court may stay imposition or execution of sentence and place a defendant on probation "[e]xcept when a sentence of

life imprisonment is required by law." Minn.St. 609.185 mandates a life sentence upon conviction of first-degree murder. Defendant's original sentence was thus invalid. Rule 27.03, subd. 9, Rules of Criminal Procedure, states: "The court at any time may correct a sentence not authorized by law." The postconviction court therefore acted properly in removing the stay of execution on the second sentence.

■ More is involved, however, than a change from an invalid sentence to the only available valid one, since the sentencing judge could originally have made the sentences either concurrent or consecutive. The sentencing judge carefully considered whether to order concurrent or consecutive sentences. His primary concern was that defendant not be released without lifelong supervision because of society's need for protection. He also was concerned that defendant not be confined for his entire life. In an effort to compromise these objectives, he arrived at and imposed an invalid sentence. Although the corrected sentence is a valid one, it is unclear that that sentence effectuates the intention of the sentencing judge. We therefore believe that the interests of justice would be best served by remanding to the sentencing judge for resentencing.

■ We do not believe that on resentencing the sentencing judge is bound by our holdings in *State v. Holmes,* 281 Minn. 294, 161 N.W.2d 650 (1968), and *State v. Prudhomme,* 303 Minn. 376, 228 N.W.2d 243 (1975), that upon reconviction or resentencing the court is not authorized to impose a harsher sentence than that originally imposed. Those cases involved meritorious challenges by defendants and to have allowed an increased sentence upon further proceedings would have been to establish a rule which chilled the rights of defendants to seek relief from improper convictions or sentences. The present case involves simply an error of law in sentencing. It is not at all clear that fairness and public policy entitle a defendant to the benefit of a mistake by the sentencing judge. We there-

fore conclude that the sentencing judge may order the sentences to run either concurrently or consecutively.

Sentence vacated; remanded for resentencing.