517 A.2d 94

**Jacqueline Camille ROBINSON**

v.

**STATE of Maryland.**

**No. 65, Sept. Term, 1986.**

Court of Appeals of Maryland.

Nov. 12, 1986.

740

Timothy F. Maloney (Edward P. Camus, on the brief), Riverdale, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

ADKINS, Judge.

The question presented in this case is whether the doctrine of collateral estoppel bars the State from prosecuting a defendant for "depraved heart" murder after a prior conviction for assault with intent to disable and a prior

acquittal of assault with intent to murder the same victim, arising from the same act. We hold that it does not.

On 3 September 1984 appellant, Jacqueline Camille Robinson, and her lover, Henry Garvey, were alone in Robinson's apartment. An altercation occurred. Robinson shot Garvey in the thigh; the bullet travelled upwards and lodged in his abdomen. A jury sitting in the Circuit Court for Prince George's County convicted her of, among other things, assault with intent to disable. It acquitted her of assault with intent to murder. She was duly sentenced.[1]

■ Shortly after Robinson's trial Garvey died. She was then charged with second degree murder. She moved to dismiss the indictment on various grounds, including collateral estoppel. In its response to the motion, the State conceded that Robinson "cannot now be tried on matters that were litigated in the prior trial" and that "[t]he only new fact that the State is proceeding on in the current indictment, is the death of the victim, Dr. Garvey, ... after the conclusion of the first trial." But it contended that the "current indictment" was based on "the 'depraved heart' theory of second degree murder"—an issue that, as Robinson agrees, was not raised at her trial. The Circuit Court for Prince George's County (Casula, J.) accepted the State's argument and denied the motion to dismiss. Robinson appealed to the Court of Special Appeals.[2] We issued the writ of certiorari while the case was pending in the intermediate appellate court. 306 Md. 555, 510 A.2d 561.

### I

■ The doctrine of collateral estoppel is, of course, applicable to criminal as well as civil cases. *Bowling*, 298 Md. at

---

1. The judgment was affirmed by the Court of Special Appeals. *Robinson v. State*, 66 Md.App. 246, 503 A.2d 725, *cert. denied*, 306 Md. 289, 508 A.2d 489 (1986).

2. An immediate appeal may be taken from a pretrial order denying a motion to dismiss on the ground of double jeopardy. *Bowling v. State*, 298 Md. 396, 401 n. 4, 470 A.2d 797, 799 (1984), and cases cited therein.

401, 470 A.2d at 799; *Scarlett v. State,* 201 Md. 310, 318, 93 A.2d 753, 757, *cert. denied,* 345 U.S. 955, 73 S.Ct. 937, 97 L.Ed. 1377 (1953); *see also Cook v. State,* 281 Md. 665, 668, 381 A.2d 671, 673, *cert. denied,* 439 U.S. 839, 99 S.Ct. 126, 58 L.Ed.2d 136 (1978) ("It is beyond question that the closely related doctrines of res judicata and collateral estoppel apply to criminal as well as civil causes"). In *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court decided that in a criminal case the doctrine of collateral estoppel is part of federal double jeopardy law and applicable to the states by virtue of *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), *see* R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 37.8 (1983). "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194. Robinson asserts that the doctrine should bar her second prosecution because her conviction of assault with intent to disable determined in her favor a fact—that she intended to disable Garvey— that necessarily would prevent her conviction of "depraved heart" murder. That fact, she argues, cannot be relitigated. The State counters by contending that in the criminal context a defendant may raise the bar of collateral estoppel only when an "issue of ultimate fact" has been determined in her favor by an *acquittal.* Since Robinson was *convicted* of assault with intent to disable, says the State, she cannot raise collateral estoppel.

■ We reject the State's position. Although both *Ashe* and *Powers v. State,* 285 Md. 269, 401 A.2d 1031 involved acquittals, the language we have just quoted from the former case makes it clear that the critical consideration is whether "an issue of ultimate fact" has been determined in favor of a defendant. The process by which that determination is made, whether by acquittal or conviction, is not critical. *See Green v. Estelle,* 601 F.2d 877 (5th Cir.1979); *State v. Emery,* 27 N.J. 348, 142 A.2d 874 (1958); *Carson v.*

*People,* 4 Colo.App. 463, 36 P. 551 (1894); *see also Beatty v. State,* 56 Md.App. 627, 468 A.2d 663 (1983), *cert. denied,* 299 Md. 425, 474 A.2d 218 (1984), *cert. denied,* 469 U.S. 851, 105 S.Ct. 170, 83 L.Ed.2d 105 (1985); *U.S. v. Snell,* 592 F.2d 1083 (9th Cir.1979), *cert. denied,* 442 U.S. 944, 99 S.Ct. 2889, 61 L.Ed.2d 315; and *U.S. v. Hinton,* 543 F.2d 1002 (2d Cir.1976), *cert. denied,* 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (in the last three cases collateral estoppel resulting from prior conviction considered but found not to apply).

## II

Having concluded that Robinson may raise the defense of collateral estoppel, we now consider whether it should be applied to bar her prosecution for "depraved heart" murder. As we have noted, her argument is essentially this: She was convicted of assaulting Garvey with intent to disable him. The conviction established as a fact that this was her only intent, especially in view of her acquittal of assault with intent to murder, which established the fact that she did not intend to murder her lover. "Depraved heart" murder does not require any specific intent to kill or injure. Moreover, "depraved heart" murder must be based on general recklessness; the act on which the charge is based must be dangerous to a number of persons, but not directed at any particular person. Robinson concludes that "[b]ecause a jury has established the fact that [she] is guilty of a deliberate intent to disable a specific individual, the doctrine of collateral estoppel bars the State from arguing that the same act also gives rise to a finding of a wanton and reckless disregard for human life." Robinson's brief at 9. We disagree.

▮ Assault with intent to disable is one of the offenses proscribed by Md. Code, Art. 27, § 386.[3] The intent ele-

───────────

**3.** Md.Ann. Code Art. 27, § 386 (1957, 1982 Repl.) states in pertinent part:

ment of assault with intent to disable is a specific intent to do just that, and is inconsistent with an intent to murder. *State v. Jenkins,* 307 Md. 501, 515 A.2d 465, 472 (1986). It is true, as Judge Eldridge pointed out in *Jenkins,* that even where intents are inconsistent, offenses (*e.g.,* assault with intent to disable and assault with intent to murder) may not be. This is because "one may harbor at the same time, on an alternate basis, inconsistent intents." *Id.,* 515 A.2d at 473. But in this case we are not faced with the problem of alternate inconsistent intents. Intent to disable is in no way inconsistent with the intent element of "depraved heart" murder.

That offense does not require an intent to kill, which would be inconsistent with an intent to disable. It is one of the "unintentional murders," *Glenn v. State,* 68 Md.App. 379, 386, 511 A.2d 1110, 1114 (1986), that is punishable as murder because another element of blameworthiness fills the place of intent to kill.[4] As Judge Moylan explained in *Debettencourt v. State,* 48 Md.App. 522, 530, 428 A.2d 479, 484 (1981):

> "It ['depraved heart' murder] is the form [of murder] that establishes that the wilful doing of a dangerous and reckless act with wanton indifference to the consequences and perils involved, is just as blameworthy, and just as worthy of punishment, when the harmful result ensues, as is the express intent to kill itself. This highly blameworthy state of mind is not one of mere negligence.... It is not merely one even of gross criminal negligence.... It involves rather the deliberate perpetration of a knowingly dangerous act with reckless and wanton unconcern and indifference as to whether anyone is harmed or not.

"If any person shall unlawfully shoot at any person ... with intent to maim, disfigure or disable such person, ... every such offender ... shall be guilty of a felony...."

**4.** For a general discussion of the development of the common law in the area of "implied malice," *see Evans v. State,* 28 Md.App. 640, 695–700, 349 A.2d 300, 335–337 (1975), *aff'd,* 278 Md. 197, 362 A.2d 629 (1976).

The common law treats such a state of mind as just as blameworthy, just as anti-social and, therefore, just as truly murderous as the specific intents to kill and to harm."

■ Robinson seizes upon the last sentence we have just quoted and argues that "depraved heart" murder does not exist if there is a specific intent to harm. *See also Lindsay v. State,* 8 Md.App. 100, 104, 258 A.2d 760, 763 (1969) ("depraved heart" murder exists where, "conceding that there was no actual intent to injure, an act was done or duty omitted wilfully, the natural tendency of which was to cause death or great bodily harm"); R. Perkins, *Criminal Law* at 36 (2d ed. 1969) ("... even if there is no actual intent to kill or injure"). But these authorities say no more than that the crime may be committed absent intent to injure. They do not hold that the crime is not committed if there is an intent to injure.

"A depraved heart murder is often described as a wanton and wilful killing. The term 'depraved heart' means something more than conduct amounting to a high or unreasonable risk to human life. The perpetrator must [or reasonably should] realize the risk his behavior has created to the extent that his conduct may be termed wilful. Moreover, the conduct must contain an element of viciousness or contemptuous disregard for the value of human life which conduct characterizes that behavior as wanton."

R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 1.6–3 (1983). The critical feature of "depraved heart" murder is that the act in question be committed "under circumstances manifesting extreme indifference to the value of human life." 2 *Wharton's Criminal Law* § 143 at 197 (14th ed. 1979). The terms "recklessness" or "indifference," often used to define the crime, do not preclude an act of intentional injury. They refer to "recklessness" or "indifference" to the ultimate consequence of the act—death—not to the act that produces that result. *See Model Penal Code* § 210.2 comment at 15–22

(1980). "That the actor intended to cause injury of a particular nature or gravity is, of course, a relevant consideration in determining whether he acted with 'extreme indifference to the value of human life. . . .' " *Id.* at 28–29.

It would be strange, indeed, if unintended death resulting from an intentionally-inflicted injury were deemed less blameworthy than unintended death resulting from an injury not so inflicted. While we have not dealt with this precise issue, the Court of Special Appeals has. In *Moore v. State*, 15 Md.App. 396, 291 A.2d 73 (1972), it affirmed a conviction for second degree murder (apparently on the "depraved heart" basis) when a child died after her father, without intent to kill, had spanked and shaken her. Other jurisdictions have had no difficulty in finding one guilty of "depraved heart" murder when death followed the infliction of an intentional injury. *See, e.g., People v. Jones*, 565 P.2d 1333 (Colo.1977) (man stabbed a woman in her apartment; she later died; conviction of "depraved heart" murder affirmed). *Conyers v. State*, 396 A.2d 157 (Del.1978) (victim shot in heart at close range while hopelessly inebriated; no intent to kill found; assailant guilty of "depraved heart" murder); *People v. McNeely*, 77 A.D.2d 205, 433 N.Y.S.2d 293 (1980) (extreme child abuse); *People v. Stevens*, 51 A.D.2d 659, 377 N.Y.S.2d 994 (1976) (severe beating of 17–year-old girl who offered no resistance); *People v. Poplis*, 30 N.Y.2d 85, 330 N.Y.S.2d 365, 281 N.E.2d 167 (1972) (child beating); *State v. Mytych*, 194 N.W.2d 276 (Minn. 1972) (woman shot estranged lover, who later died; conviction of "depraved heart" murder affirmed). *But see State v. Dalglish*, 131 Ariz. 133, 639 P.2d 323 (1982); *State v. Norton*, 675 P.2d 577 (Utah 1983).

We hold, therefore, that when injury is intentionally inflicted, without intent to kill, and the victim subsequently dies as the result of the injury, the assailant may be guilty of "depraved heart" murder, if no excuse, justification, or mitigation is present, and if the circumstances are such as to demonstrate the requisite element of depravity. Accordingly, Robinson's conviction of assault with intent to

disable does not collaterally estop the State from prosecuting her for "depraved heart" murder because of the finding of intent to injure necessarily inherent in that conviction.

## III

This leaves for consideration Robinson's argument that "depraved heart" murder requires a showing of universal malice—an act imminently dangerous to more than just the person who was killed. She contends that her conviction of assault with intent to disable Garvey, when they were alone in her apartment, establishes conclusively that she could not have harbored the requisite universal malice. We believe, however, that universal malice, while it is a proper basis for "depraved heart" murder, is not the only basis for the offense.

There are, to be sure, decisions that support Robinson's position. The leading one is *Darry v. People*, 10 N.Y. 120 (1854). Darry beat his wife; she died as a result, although he had not intended that outcome. In that case the New York Court of Appeals had before it a statute designed to improve the common law. The statute defined as murder the killing of a human being "unless it be manslaughter, or excusable or justifiable homicide, ... [w]hen perpetrated by an act imminently dangerous *to others*, and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual...." *Id.* at 153 [emphasis supplied]. The *Darry* court examined legislative intent. It concluded that at common law he would have been guilty of murder, *id.* at 154, but that he was not guilty under the statute because it did not extend to a case in which only a particular victim was involved. Rather, the imminently dangerous act had to be dangerous to *others*. The court reasoned that a brutal assault on an individual might evince a "depraved heart," but it could not "be evidence of a recklessness and disregard of human life generally." *Id.* at 156.

In *Mitchell v. State*, 60 Ala. 26 (1877), the Supreme Court of Alabama construed a statute copied from the New York one. Relying upon *Darry*, it held that the requisite showing of universal malice was not present in the case of a man who had struck another man with a stick, causing the latter's eventual death. To the same effect (construing similar statutes and often relying on *Darry* ) are cases such as *Longinotti v. People*, 46 Colo. 173, 102 P. 165 (1909),[5] *Massie v. State*, 553 P.2d 186 (Okl.Cr.1976), and *State v. Russell*, 106 Utah 116, 145 P.2d 1003 (1944). On the other hand, two courts faced with a statute like the one involved in *Darry* have read legislative intent otherwise. In *State v. Lowe*, 68 N.W. 1094 (Minn.1896), the Supreme Court of Minnesota expressly disagreed with *Darry*. Looking to Minnesota legislative intent, the court thought it was not "necessary that more than one person was or might have been put in jeopardy by [the imminently dangerous] act." *Id.* at 1095. And in *Hogan v. State*, 36 Wis. 226 (1874) the Supreme Court of Wisconsin held that the statutory phrase "dangerous to others" did not mean "dangerous to several" but rather "that the act shall be dangerous to other or others, that is to say, than the person committing it." *Id.* at 247.

Still other courts, construing other statutes, have found no need for universal malice. New York, the home of *Darry*, later amended its "depraved heart" law to make a person guilty of murder when "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." N.Y. Penal Law § 125.25 subd. 2 (Consol.1984). The New York Court of Appeals noted that this statute (unlike the one in *Darry* ) no longer required a threat of danger to more than one person. *People v. Poplis, supra,* 30 N.Y.2d at 89, 330 N.Y.S.2d at 367, 281 N.E.2d at 168. To

---

5. As we have noted, Colorado has had an apparent change of heart. *See People v. Jones, supra; People v. Ramos,* 708 P.2d 1347 (Colo.1985).

the same effect, under a somewhat similar statute, is *Conyers v. State, supra.*

All of these cases involved particular statutes and frequently an analysis of particular legislative intent. Except to the extent they show that legislative intent can be read quite differently, even in the face of identical statutory language, they are of little help to us. Maryland has no "depraved heart" murder statute. By virtue of Code, Art. 27, § 411, "all ... kinds of murders [other than those defined in §§ 407–410] shall be deemed murder in the second degree." These statutes do not create a new statutory crime of murder, but merely divide the crime into degrees, leaving the common law concept of murder unimpaired. *Campbell v. State,* 293 Md. 438, 444 A.2d 1034 (1982). What, then, was the common law concept of "depraved heart" murder, so far as universal malice is concerned?

Lord Coke gives an example:

"If a man knowing that many people come in the street from a sermon, throw a stone over a wall, intending only to feare them, or to give them a light hurt, and thereupon one is killed, this is murder; for he had an ill intent, though that intent extended not to death, and though he knew not the party slaine."

Coke, Third Inst. 56 (1797 ed.). This passage suggests that universal malice is required, for the "ill intent" of the stone-thrower was not directed at any one of the people, but at "them." Sir William Blackstone, on the other hand, seems to see the possibility of universal malice being directed at an individual only:

"Also, even if upon a sudden provocation one beats another in a cruel and unusual manner, so that he dies, though he did not intend his death, yet he is guilty of murder by express malice; that is, by an express evil design, the genuine sense of *malitia.* As when a park-keeper tied a boy, that was stealing wood, to a horse's tail, and dragged him along the park; when a master corrected his servant with an iron bar, and a schoolmaster stamped on

his scholar's belly; so that each of the sufferers died; these were justly held to be murders, because the correction being excessive, and such as could not proceed but from a bad heart, it was equivalent to a deliberate act of slaughter. Neither shall he be guilty of a less crime, who kills another in consequence of such a wilful act, as shews him to be an enemy to all mankind in general; as going deliberately with a horse used to strike, or discharging a gun, among a multitude of people. So if a man resolves to kill the next man he meets, and does kill him, it is murder, although he knew him not; for this is universal malice."

4 Bl.Comm. 199–200 (1769, Facsimile ed. 1979).

The last act Blackstone refers to as denoting "universal malice" is the killing of a single individual who is not "among a multitude of people." Noteworthy, too, is his lumping of "intent-to-commit-grievous-bodily-harm" murder (often listed as a separate category from "depraved heart" murder) with the latter. The reason appears to be that both involve "a bad heart" which is to say the depravity, the reckless indifference to value of human life, that we associate with "depraved heart" murder. If, as we have seen, extreme blameworthiness is the basis for establishing a killing as "depraved heart" murder, despite a lack of intent to kill, this treatment is logical. One who indifferently fires into a crowd has one sort of depraved mental state; one who deliberately injures another with reckless unconcern for the likely fatal consequences has another; but both are worthy of severe blame, as Blackstone recognizes.

What the common law of England understands "universal malice" to be, in the context of "depraved heart" murder, may not be entirely clear. It is difficult to say what the position was in 1776, when that common law was preserved for the benefit of the "Inhabitants of Maryland...." Decl. of Rights, Art. 5. No Maryland appellate court has directly addressed this issue. But this Court is authorized to adapt and modify the common law to meet

modern day demands and needs. *Jones v. State*, 303 Md. 323, 493 A.2d 1062 (1985). We hold that under the common law of Maryland "depraved heart" murder does not require that more than one life be placed in imminent danger by an assailant's life-threatening act, although the offense clearly is committed if, under appropriate circumstance, several lives are threatened. The requisite disregard for human life, or as Professor Perkins says, the "man-endangering-state-of-mind," Perkins, *supra*, at 46, may be found in either case.

We reach this conclusion because of what we have already said about the blameworthiness of an act that, without intent to kill, nevertheless produces that result because of the actor's reckless disregard for the likely fatal consequences of the act. We are not persuaded that such an act is punishable as second degree murder only when several potential victims are involved. As we have seen, Blackstone seems to place on a par the evil mental states required for "intent-to-commit-grievous-bodily-harm" murder and for "depraved heart" murder. Indeed, he may regard them both as springing from the same root. The American Law Institute follows a similar analysis. Its *Model Penal Code* § 210.2 provides (subject to an exception not here pertinent):

"(1) . . . criminal homicide constitutes murder when:

(b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life."

According to the ALI, this provision encompasses both "intent-to-cause-grievous-bodily-harm" murder and "depraved heart" murder. *Id.*, comment at 22, 28. The critical factor in either case is not the number of persons whose lives are threatened but whether the assailant acted with extreme indifference to the value of any human life. *Id.* at 28–29. *See also* W. LaFave and A. Scott, *Criminal Law* § 7.4 at 617 (2d ed.1986).

As a consequence, the fact that Robinson's pistol shot was directed only at Garvey, and not at a group of people, does not bar her prosecution for "depraved heart" murder. *See Moore v. State, supra.* Her conviction of assault with intent to disable Garvey does not, therefore, establish any fact that collaterally estops the State so far as the instant case is concerned.[6] Whether the assault was committed under circumstances manifesting sufficiently depraved conduct (extreme indifference to the value of human life) to support a conviction for "depraved heart" murder is, of course, not before us.

ORDER DENYING MOTION TO DISMISS INDICTMENT AFFIRMED. CASE REMANDED FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. APPELLANT TO PAY THE COSTS.

---

**6.** Nor does her acquittal of assault with intent to murder create collateral estoppel. The fact that Robinson did not intend to murder Garvey would not be a defense to "depraved heart" murder, which does not require the presence of such an intent.