STATE of Minnesota, Respondent,

v.

Darren NETLAND, Appellant.

No. C3–94–598.

Supreme Court of Minnesota.

Aug. 4, 1995.

Michael F. Cromett, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Michael Junge, McLeod County Atty., Glencoe, for respondent.

## OPINION

COYNE, Justice.

The jury found defendant, Darren Netland, guilty of first-degree premeditated murder, first-degree premeditated murder of an unborn child, and attempted first-degree premeditated murder. The trial court sentenced him to two concurrent terms of life in prison for the two murders and a consecutive term of 180 months for the attempted murder. On appeal from judgment of conviction the defendant contends that the state failed to present sufficient evidence to establish premeditation and that, at most, he is guilty of two counts of second-degree murder and one count of attempted second-degree murder. Alternatively, defendant seeks a new trial on the ground that the jury's verdicts of guilty of two counts of first-degree murder are legally inconsistent with the jury's verdicts of guilty of two counts of third-degree depraved mind murder. We affirm.

1. There is no merit to defendant's contention that the state's evidence failed to establish premeditation. Early on June 18, 1993, defendant forcibly entered a 70–foot long mobile home situated in a Hutchinson, Minnesota trailer park just down the street from the defendant's trailer house. The residents of the mobile home, Bonnie Rannow and Scott Vacek, were asleep in a bedroom at the other end of their home. Defendant knew neither Rannow nor Vacek. When he entered the mobile home, defendant took with him a partially-filled one-gallon gasoline can which the residents had left on the outside deck. Once inside, defendant removed all his clothes, then pulled four large steak knives from a knife block. Defendant took two of the knives and walked to the bedroom where Rannow and Vacek were sleeping, stabbed Vacek in the chest, then stabbed

Rannow. Vacek woke in the dark to sounds of Rannow screaming. Realizing that there was a knife in his chest, Vacek removed the knife and shouted. Defendant fled without attempting to take his clothing with him from the kitchen and he took refuge in his own nearby trailer.

Vacek called 911. Defendant had stabbed Rannow with such force that the knife, the blade of which was 8 inches long, penetrated to a depth of 10 inches. This wound had caused Rannow to lose a large amount of blood. After doctors at the hospital determined that they could not save Rannow's life, they concentrated on trying to save Rannow's unborn child, which was at a developmental stage of 23 to 25 weeks. Doctors delivered the baby by emergency C-section, but the baby showed no signs of life and was pronounced dead a short time after being delivered. Rannow also died. Vacek sustained a stab wound approximately 2 to 3 inches deep. Although the knife penetrated his lung, Vacek survived.

In the Rannow/Vacek mobile home, the police immediately found considerable evidence linking defendant to the scene, including his wallet and the keys to his car and trailer house, all of which he had left behind in the kitchen when he fled the murder scene naked. A police K–9 team also tracked a scent from the murder scene to defendant's trailer and observed a bare footprint along the trail.

The police awakened defendant who agreed to accompany them to the police station. On the way to the station, defendant said to the police that he knew why they wanted to talk with him. He said he had had a dream in which he "knifed" a couple of people and he was sure or afraid they were dead. Defendant asked the police if this incident really happened. When told that it had happened, defendant started to cry.

About 3 hours after the incident, defendant was read his *Miranda* rights and questioned at the police station. He said that he had spent the evening drinking and that he did not remember everything that happened. He did remember entering the trailer, grabbing the knives, entering a bedroom where

two people were sleeping, and making a swinging motion at the two people. He also remembered running naked back to his trailer after he stabbed the two people. In addition, he admitted that he previously had fantasized about killing people whom he did not know, "like a spy" would do.

At trial the state presented this evidence, as well as evidence that one or two months before the killing defendant had wondered aloud in the presence of two friends what it would be like to kill someone and had asked them if they ever had thought about killing anyone.

The state's theory of the case, based on all this evidence, was that defendant acted out his desire to be an anonymous killer. It argued that defendant had entered the mobile home in question, carrying the gas can into the kitchen, that he saw the knives, undressed, and then went to the back bedroom with the intent to murder the residents of the trailer. The state theorized that defendant disrobed in order to avoid getting blood on his clothes and that he planned on using the gasoline to set a fire in order to destroy all evidence of the crime.

The defense argued that the evidence failed to establish either premeditation or intent to kill. It argued that defendant had consumed so much alcohol before the killing that he did not know what he was doing but acted unconsciously and rashly.

■ We have no hesitancy in concluding that the evidence, looked at in the light most favorable to the guilty verdicts, was sufficient to support the jury's determination that defendant acted with premeditation. "Premeditation" is defined in Minn.Stat. § 609.18 (1994) as meaning "to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." In order to prove premeditation, "the state must always prove that, after the defendant formed the intent to kill, some *appreciable time* passed during which the consideration, planning, preparation or determination required by Minn.Stat. § 609.18 prior to the commission of the act took place." *State v. Moore*, 481 N.W.2d 355, 361 (Minn.1992) (emphasis added). That an exact time period cannot be ascertained is not dispositive of the

issue of premeditation. On the contrary, "we have long recognized that premeditation requires no specific period of time for deliberation * * *." *Id.* See also *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988); *State v. Rainer*, 411 N.W.2d 490, 496 (Minn.1987); *State v. Andrews*, 388 N.W.2d 723, 728 (Minn.1986).

A number of prior decisions support our conclusion that the evidence was sufficient to satisfy the premeditation requirement. For example, in *Bangert v. State*, 282 N.W.2d 540 (Minn.1979), we held the jury's conclusion that the defendant acted with premeditation was reasonable where the defendant, in order to kill the victims in bed, "had to procure the rifle from its location in the house, walk down the hallway to the [victims'] bedroom, raise the rifle, take careful aim, and pull the trigger three times." *Bangert*, 282 N.W.2d at 544. The similarity between the facts of *Bangert* and those of the instant case are striking. See also *State v. Andrews*, 388 N.W.2d 723 (Minn.1986); *State v. Merrill*, 274 N.W.2d 99 (Minn.1978). The chief difference between *Bangert* and the instant case is the fact that here the assailant could not distance himself from his victims: he entered the bedroom and actually plunged a knife into first one and then another of his sleeping victims. In the instant case, it is indeed possible that the jury inferred that defendant formed the requisite intent to kill and began premeditating before he even entered the trailer.

■ We also reject defendant's argument that the evidence of his intoxication precluded a finding by the jury of premeditation. It is true that there was evidence that defendant had a blood alcohol concentration of .10 at the time he was questioned, approximately 3 hours after the incident, and that there was evidence to the effect that defendant's blood alcohol concentration at the time of the incident ranged anywhere from .142 to .257. However, the evidence surely did not preclude the jury from determining that defendant had the requisite mental state.

Minn.Stat. § 609.075 provides:

An act committed while in a state of voluntary intoxication is not less criminal

by reason thereof, but when a particular intent or other state of mind is a necessary element to constitute a particular crime, the fact of intoxication may be taken into consideration in determining such intent or state of mind.

Under the statute, the jury was free to consider the evidence of defendant's intoxication in determining whether or not he killed the victims with premeditation and intent, but the jury was not required to conclude that defendant did not have the requisite mental state. *State v. Olson*, 298 Minn. 551, 214 N.W.2d 777 (1974); *State v. Bonga*, 278 Minn. 181, 153 N.W.2d 127 (1967). Our opinion in *State v. Potter*, 288 N.W.2d 713 (Minn. 1980), is also instructive. There we reversed a pretrial order by which the district court suppressed evidence and dismissed an assault prosecution against a man who allegedly assaulted police officers as they took him to a detoxification center. The district court concluded in that case that the defendant was so intoxicated that he could not bear any responsibility for his assaultive conduct, but we reversed because the issue of whether the defendant's intoxication was a defense was a matter for the jury. *Id.* at 714.

█ 2. Defendant's other contention is that the jury's verdicts of guilty of two counts of first-degree premeditated murder are legally inconsistent with the jury's verdicts of guilty of two counts of third-degree depraved mind murder. We reject this contention as well.

█ We have ruled in numerous cases that a defendant is not entitled to relief simply because two verdicts—for example, a guilty verdict of one offense and a not guilty verdict of a similar offense—by the same jury are *logically inconsistent*. The rationale for this approach is that the not guilty verdict may have been based on jury lenity and that "[t]he exercise of such leniency, which is an aspect of the right to jury trial, is preferable to a system in which jurors, whenever they believe the defendant guilty, 'would be strong-armed into rendering an all-or-nothing verdict.'" 3 W. LaFave and J. Israel, *Criminal Procedure* § 23.7(e) (1984 & Supp. 1991). Decisions to this effect by this court are cited in *State v. Moore*, 438 N.W.2d 101,

108 (Minn.1989) (hereinafter *Moore I*). While many other courts have rejected the argument that a distinction can be made which allows the defendant relief if the verdicts may be said to be *legally* (rather than logically) *inconsistent*, we made such a distinction in an unrelated *Moore* case, *State v. Moore*, 458 N.W.2d 90, 93–95 (Minn.1990) (hereinafter *Moore II*). *Moore I* suggests that verdicts are *legally inconsistent* if a single necessary element of a greater and included offense are subject to conflicting findings by the jury. *Moore*, 438 N.W.2d at 108. *Moore II* held that the guilty verdict of premeditated, intentional murder in that case was *legally inconsistent* with the guilty verdict of culpably negligent manslaughter. *Moore*, 458 N.W.2d at 94.

Defendant's argument that the verdicts of guilty of first-degree premeditated murder are legally inconsistent with the verdicts of guilty of third-degree depraved mind murder is an argument that requires analysis under both *Moore* cases. Although both of these cases had been decided before the trial in this case, defendant specifically requested the trial court to submit third-degree depraved mind murder. The trial court, over the vigorous objection of the state, submitted third-degree depraved mind murder, giving the defendant's requested instruction. Under these circumstances—namely, that the defendant got exactly what he asked for—we need not and do not address the issue of the legal consistency of the jury's verdicts.

Affirmed.

TOMLJANOVICH, Justice (concurring specially).

I concur with the result; however, I respectfully disagree with the reasoning.

The majority concludes we need not address the legal consistency of the verdicts because the defendant requested the court to submit a third-degree murder instruction to the jury. If that is so, it is difficult to foresee a situation where we would ever address the issue. Since the defendant will nearly always be the party requesting submission of the lesser offense, the majority's decision today effectively precludes this court

from considering the legal consistency of verdicts except in those rare cases where the prosecution requests submission of the lesser offense. Review of the consistency of verdicts is crucial to ensure that justice was done. Because I feel the majority's holding circumvents this crucial function of judicial review, I believe we must address the legal consistency of a finding of guilt to both first-degree and third-degree murder.

Jury verdicts are legally inconsistent when a necessary element of each offense is subject to conflicting findings. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). A necessary element is an element the prosecution must prove to sustain its burden of proof. *Id.* Thus, verdicts of first-degree and second-degree murder are not legally inconsistent because the lack of premeditation is not a necessary element of second-degree murder. *Id.* (stating "if lack of premeditation was a necessary element, the state in a prosecution of second-degree murder would be required to prove that premeditation was absent.").

In this case, the jury found the defendant guilty of both first and third-degree murder. To sustain a verdict of first-degree premeditated murder, the state must prove 1) a death occurred, 2) the defendant caused the death, 3) the defendant acted with premeditation, and 4) the defendant acted with the intent to kill. *See* Minn.Stat. § 609.185(a) (1994); 10 Minn.Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 11.02 (3d ed. 1990). The third-degree murder statute provides in part:

> (a) Whoever, without intent to effect the death of any person, causes the death of another by perpetrating an act eminently dangerous to others and evincing a depraved mind, without regard for human life, is guilty of murder in the third degree and may be sentenced to imprisonment for not more than 25 years.

Minn.Stat. § 609.195(a) (1994).

Although lack of intent to effect death is part of the description of depraved mind murder, lack of intent is not an essential element of Minn.Stat. § 609.195(a) since it need not be proven at trial. *See* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 11.18 (3d ed. 1990). There are five elements of third-degree murder pursuant to Minn.Stat. § 609.195(a). First, a death occurred. Second, an intentional act of the defendant caused the death. Third, the act was eminently dangerous to others. That is, the act was eminently dangerous to more than one person. *See State v. Wahlberg,* 296 N.W.2d 408, 417 (Minn.1980) (stating the statute was intended to cover reckless or wanton acts committed without regard to their effect on a particular person). Fourth, perpetration or commission of the act evinces a depraved mind. A depraved mind has been characterized as a person who by their conduct displays disregard for human life. Conduct that displays disregard for human life and thus evinces a depraved mind is conduct that is wanton or vicious. *See State v. Jackman,* 396 N.W.2d 24, 30 (Minn.1986).

Fifth, the act was perpetrated without regard for human life. If an act is perpetrated without regard for human life, it means that under the circumstances existing at the time the act was committed, it was very likely that someone would be killed, and that despite having knowledge of this high degree of likelihood, the defendant proceeded to act, indifferent to the consequences. *See* Model Penal Code § 210.2 comment at 28 (1980) (stating "the actor must perceive and consciously disregard the risk of death of another before the conclusion of recklessness can be drawn."). The terms "recklessness" or "indifference" do not preclude an act of intentional injury. *See Robinson v. State,* 307 Md. 738, 517 A.2d 94, 98 (App.1986). The terms "recklessness" or "indifference" refer to the risk of death, not to the manner in which the act that produces that result is undertaken. *Id.* Thus, to the extent that CRIMJIG 11.18, which the trial court used in instructing the jury,[1] indicates that the third-degree murder

---

1. In relation to the third-degree murder charge, the trial judge instructed the jury:

   The elements of murder in the third degree are: First, the death of Bonnie Rannow must be proven. Second the defendant caused the death of Bonnie Rannow. Third, defendant's intentional act which caused the death of Bonnie Rannow was eminently dangerous to hu-

statute requires proof that the defendant's act that caused the victim's death was committed in a reckless or wanton manner, that portion of the JIG is erroneous.

CRIMJIG 11.18 states in relevant part:

Third, defendant's intentional act which caused the death of ___ was eminently dangerous to human beings and was performed without regard for human life. Such an act may not be specifically intended to cause death, and may be without specific design on the particular person whose death occurred, but *[the act] is committed in a reckless or wanton manner* with the knowledge that someone may be killed and with a heedless disregard of that happening.

(emphasis added).

This explication of the statute implies that one element of proof involves a determination that the act was committed in a reckless or wanton manner, which implies a comparison with how a reasonable person would have acted. Use of the word "reckless" has the unintended effect of adding an element of mental state to the statute that does not exist. For example, a person could deliberately and intentionally plan to shoot at a train full of people. That conduct would not be committed in a reckless or wanton manner. Rather, that conduct would be planned and intentionally committed with reckless disregard for the likelihood of death.

I believe that in this case the convictions under the first-degree premeditated murder statute and the third-degree murder statute are not inconsistent because there are no necessary elements of either offense that are subject to conflicting findings. Premeditated murder of an unborn child or of a pregnant woman is, by definition, an act that is eminently dangerous to others. Because the unborn child was inside the mother, a premeditated murder of either the mother or the unborn child necessarily involved danger to "others." Further, premeditated murder is, without question, conduct that is wanton

and vicious and thus displays a depraved heart. Finally, premeditated murder indicates a reckless or willful indifference to human life. Therefore, there are no elements of a first-degree murder conviction that are inconsistent or in conflict with a conviction for third-degree murder.

In addition, assuming appellant knew that stabbing the woman was an eminently dangerous act and that it had a high degree of risk, the only difference between whether appellant could be convicted of first or third-degree murder was whether he intended to kill the victim. Since proof of lack of intent is not a necessary element of third-degree murder, no inconsistency exists between these two convictions.

For these reasons, I believe that a conviction under Minn.Stat. § 609.185(a) is not legally or logically inconsistent with a conviction under Minn.Stat. § 609.195(a).

KEITH, Chief Justice (concurring specially):

I join in the special concurrence of Justice Tomljanovich.

PAGE, Justice (concurring specially):

I join in the special concurrence of Justice Tomljanovich.

---

man beings and was performed without regard for human life. Such an act may not be specifically intended to cause death, and may be without specific design on the particular person whose death occurred, but *[the act] is*

*committed in a reckless or wanton manner with the knowledge that someone may be killed and with a heedless disregard for that happening.* (emphasis added).