**STATE of Minnesota, Respondent,**

v.

**Theodore Carl ULM, Appellant.**

**No. 81–1152.**

Supreme Court of Minnesota.

Oct. 22, 1982.

Rehearing Denied Nov. 22, 1982.

Genty & Eggert and Francis J. Eggert, Winsted, for appellant.

Warren Spannaus, Atty.Gen., Gary Hansen and Kenneth W. Saffold, Sp.Asst.Atty. Gen., St. Paul, Harry Christian, County Atty., LeCenter, for respondent.

WAHL, Justice.

Theodore Ulm was found guilty of first-degree murder and sentenced to a life term. He appeals from his conviction, claiming that the trial court erred in rejecting his mental illness defense and in its finding of premeditation. He also raises issues relating to the grand jury proceedings, the admission of certain evidence, and the sentence he received. We affirm.

The victim, Harold Jones, was employed by Sharon Township to do general road maintenance. On March 2, 1981, he and a helper, Casey Vanderlouw, were cutting brush along the township road that ran along the edge of Ulm's homestead. Seventy-three-year-old Ulm had complained to Jones in the past about the practice of cutting brush along that road. He believed the road veered south into his property, and he had asked the town board several years earlier to move the road.

After Jones and Vanderlouw had been working for about half an hour, Ulm took his .22 Browning automatic pistol, loaded it,

and walked with his wife from his home, up the driveway and over to where Jones was picking up debris from the road. Leaving his wife 10–15 feet away, Ulm approached Jones and told him he was trespassing. After a brief conversation, Jones turned his back on Ulm. Ulm later told a psychiatrist, "I told him he wasn't going to blackmail me anymore so I let him have it." Ulm fired one or two shots into Jones' back, sending him to his hands and knees in the road. Ulm then closed in on Jones from behind and fired five or six more shots from a range of 1 to 2 feet. Ulm shouted, "You won't be piling no more brush on my land." He then walked slowly back to his house with his wife, pausing to turn and shout to Vanderlouw, "You son-of-a-bitch, you can get the same thing if you want it." Jones died 2 hours later.

Sheriff Pat Smith and five deputies drove up to the Ulm residence 45 minutes later to take Ulm into custody. Smith called for Ulm over the P.A. system. Mrs. Ulm appeared and motioned for the sheriff to approach her. She told him that Ulm was inside, and the officers entered the house. Smith found Ulm in the living room. When the sheriff appeared, Ulm said from his chair, "Hello, Sheriff, I've been expecting you." Smith replied, "I guess we have some troubles." Ulm answered, "Yes. I shot Harold."

When the sheriff told Ulm he was under arrest, Ulm rose and walked toward the bedroom, saying, "I suppose you want the gun." A deputy picked up a box of ammunition from the top of the dresser in the bedroom. Ulm opened a dresser drawer to retrieve the gun, but Mrs. Ulm had already given it to an officer.

Three psychiatrists examined Ulm for purposes of the insanity defense: Dr. Carl Schwartz and Dr. Fred Wilson for the defense, and Dr. Charles McCafferty for the prosecution. All three reached the conclusion that Ulm had paranoid psychosis, with a persecutory delusional system. Ulm was convinced that he had been mistreated by those he trusted and subjected to a double standard by the town officials. Ulm also subscribed to the views of the John Birch Society and believed that the Trilateral Commission's Communist plot to take over the United States had filtered down into his township. He believed the United States Constitution gave him the right to shoot and kill anyone trespassing on his land. Because he also believed that the township road had been built on his property and that Jones had been trespassing, he felt he had acted in accordance with the Constitution. He even expressed a hope that he would be vindicated in court. The court, as finder of fact at the bench trial, concluded that "Ulm knew the difference between right and wrong and was possessed of a free will and choice to shoot or not shoot, to kill or not kill, and to proceed with his drastic remedy for earlier disappointments from government and its functions or not."

1. Under Minnesota law, a defendant is not excused from criminal liability because of mental illness unless, at the time, "he was laboring under such a defect of reason * * * as not to know the nature of his act, or that it was wrong." Minn.Stat. § 611.026 (1980). The burden of proving the defense by a preponderance of the evidence is on the defendant. Minn.Stat. § 611.025 (1980).

■ The trial court concluded that Ulm had not sustained his burden of proof. Its findings should not be disturbed unless they are clearly erroneous, either without substantial evidentiary support or induced by an erroneous view of the law. *Reserve Mining Co. v. State,* 310 N.W.2d 487, 490 (Minn.1981). All of the experts at trial testified, and the trial court found, that appellant was suffering from paranoid psychosis, a type of mental illness, at the time of the shooting. All experts agreed as well that Ulm understood the nature of his act. The issue on appeal is whether Ulm knew that his act was wrong. It is clear that in Minnesota the defendant must know that his act was wrong in a moral sense and not merely know that he has violated a statute. *State v. Bott,* 310 Minn. 331, 336, 246 N.W.2d 48, 52 (1976); *State v. Rawland,* 294 Minn. 17, 199 N.W.2d 774 (1972).

■ The trial court concluded that it was clear from Ulm's words and actions that he

"knew the difference between right and wrong in terms of the law, his own Christian faith and the sure reaction of society." Ulm claims, however, that his insanity defense should prevail because he believed he was morally justified in killing Jones. Both the defense and state psychiatrists testified that Ulm's political beliefs convinced him that he was justified in his actions. The trial court found these political beliefs severable from his persecutory delusions. This finding is supported by testimony of the state psychiatrist, who characterized Ulm's illness as "islands of delusional thinking in a personality that is otherwise intact." *See State v. Bott,* 246 N.W.2d 48, where we upheld the conviction of a paranoid psychotic who shot a neighbor with whom he had feuded. Dr. McCafferty testified that Ulm knew that his act was wrong even though he believed it to be politically justified and that Ulm's political concepts were not essentially based in mental illness.

2. The next issue raised by Ulm is whether there was sufficient evidence of premeditation to convict him of first-degree murder.

Minnesota Statute § 609.185 (1980) defines first-degree murder as that which is done with premeditation. Premeditation, as defined in section 609.18, "means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Premeditation "denotes a pre-existing reflection and deliberation involving more than a mere intent to kill." *State v. Lee,* 282 N.W.2d 896, 901 (Minn. 1979). The subjective determination must be based on the totality of the circumstances surrounding the crime. *State v. McCullum,* 289 N.W.2d 89, 91 (Minn.1979).

Ulm asserts that he shot Jones impulsively when Jones turned his back on him. Ulm later told a psychiatrist that he had taken the gun for purposes of self-defense against men with chain saws. The evidence, however, supports the trial court's finding. On March 2, seeing Jones cutting brush, Ulm prepared for a confrontation by loading his gun, strapping it on and walking to the road where the men were working. When Jones turned away from Ulm's com-

plaints, Ulm became "annoyed" and shot him not only once but several times. Ulm's statements about protecting his property "in accordance with the Constitution" show some prior reflection on a solution to the problem of Jones cutting brush on his land. The evidence supports, beyond a reasonable doubt, the trial court's finding of premeditation.

3. Ulm also claims that the grand jury that indicted him received inadmissible evidence. Under Minn.R.Crim.P. 18.06, subd. 2, reception of inadmissible evidence is not fatal to an indictment if there is sufficient admissible evidence to support it. Even if Ulm were correct in his claims, the grand jury also heard eyewitness testimony that gave sufficient support to the indictment.

4. Ulm claims that his arrest and the admission of certain evidence at trial were illegal. He first claims that a warrant was necessary to arrest him in his home. In *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the Supreme Court held that, absent consent or exigent circumstances, an arrest warrant was necessary for an arrest at a residence. The trial court found consent where Mrs. Ulm motioned to the sheriff from her porch, indicating an invitation, and led the officers into the house. Ulm stated that he had been expecting the sheriff. We find no error in the trial court's finding.

Second, Ulm objects to the admission of the gun and ammunition obtained at the time of the arrest. Consent also excuses the need for a search warrant here. *Payton v. New York,* 445 U.S. at 590, 100 S.Ct. at 1382. After being arrested, Ulm walked into the bedroom to get his gun for the sheriff, but Mrs. Ulm had already given it to another officer. Even if a warrant were required, admission of this evidence was harmless error as a matter of law because Ulm never disputed the fact that he shot Jones. *State v. Lee,* 282 N.W.2d at 900. Finally, Ulm's confession was not unlawfully obtained. The sheriff's statement in response to Ulm's greeting was not the custodial elicitation that would require pri-

or warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) and its progeny.

5. Finally, Ulm appeals, pursuant to Minn.Stat. § 244.11 (1980), the mandatory life sentence given him under Minn.Stat. § 609.185 (1980). He contends that it is violative of equal protection guarantees and that it constitutes cruel and unusual punishment. We disagree with both contentions.

 It is true that, because first-degree murder is excluded from offenses covered by the sentencing guidelines, the trial judge cannot consider mitigating factors when imposing sentence. We find no authority, however, for the proposition that legislative imposition of a life sentence for first-degree murder and lesser sentences for lesser degrees of murder creates an irrational classification. The distinction is constitutionally permissible. *See* A. Campbell, *Law of Sentencing* § 46 at 168 (1978).

 As to the second contention, we have held that the constitutional prohibition against cruel and unusual punishment is not violated by a life sentence for first-degree murder. *State v. Walker,* 306 Minn. 105, 110–11, 235 N.W.2d 810, 814 (1975), *cert. denied,* 426 U.S. 950 (1975). Petition for treatment of Ulm's mental illness should be directed, as the trial court suggested, to the Commissioner of Corrections. Petition for other relief from the harsh consequences of conviction must be directed to the Pardon Board.

Affirmed.