STATE of Minnesota, Respondent,

v.

David Francis BROM, Appellant.

No. C3-89-2269.

Supreme Court of Minnesota.

Nov. 30, 1990.

Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

Raymond F. Schmitz, Olmsted County Atty., Rochester, for respondent.

TOMLJANOVICH, Justice.

In the early evening of February 18, 1988, Olmsted County sheriff's deputies discovered the bodies of Paulette, Bernard, Diane, and Richard Brom on the second floor of the Brom family home.[1] All four individuals had sustained numerous gashes in the head and upper body. Police subsequently found a blood-stained ax in the basement that forensic tests indicated was used to kill all four victims. Tests also revealed the ax handle bore appellant's palm and finger prints.

On February 19, 1988, Rochester police officers arrested appellant in connection with the deaths of his parents and siblings. Because he was 16 years old at the time, appellant was initially charged in the juvenile justice system. After a much-publicized reference hearing and appeal, however, appellant was referred for prosecution as an adult. *See In re D.F.B.*, 433 N.W.2d 79 (Minn.1988). Primarily in response to adverse publicity generated by his reference hearing, appellant moved the trial court for a change of venue pursuant to Minn.R.Crim.P. 25.02.[2] The court denied appellant's motion, but noted both its intention to permit thorough voir dire and its willingness to entertain a renewed motion for a change of venue once jury selection was completed.

Sixty-three potential jurors were interviewed in seven days of voir dire. Each was questioned by counsel regarding the influence of media coverage on her or his pretrial impressions and opinions. All acknowledged some awareness of the press coverage appellant's case received and several admitted predetermined opinions with respect to appellant's guilt. None of those actually empaneled, however, were challenged for cause by either the defense or the state and at the close of voir dire, neither the defense nor the state moved for a change of venue.

Because appellant pleaded both not guilty and not guilty by reason of mental illness, his trial proceeded in two phases as required by Minn.R.Crim.P. 20.02.[3] Phase

---

1. Paulette Brom was appellant's mother, Bernard Brom his father, Diane Brom his younger sister, and Richard Brom his younger brother.

2. A motion for change of venue due to prejudicial pretrial publicity "shall be granted whenever it is determined that the dissemination of potentially prejudicial material creates a reasonable likelihood that in the absence of such relief, a fair trial cannot be had." Minn.R.Crim.P. 25.02, subd. 3.

3. The Rules of Criminal Procedure provide for a two-part trial where a criminal defendant raises both the defense of not guilty and the defense of mental illness:

> (2) *Separate Trial of Defenses.* If a defendant notifies the prosecuting attorney * * * of an intention to rely on the defense of mental illness or mental deficiency together with a defense of not guilty, * * * there shall be a separation of the two defenses with a sequential order of proof before the court or jury in a continuous trial in which the defense

one was limited to a determination of whether appellant was guilty of first or second degree murder in connection with the deaths of his parents and siblings. During phase one, defense counsel made an offer of proof requesting permission to introduce expert psychiatric testimony regarding appellant's capacity to premeditate his actions.[4] The trial court denied this request and the defense rested without offering testimony. The jury was instructed that it should not consider evidence of appellant's mental illness in its phase one deliberations and found appellant guilty of four counts of murder in the first degree.

In phase two of his trial, appellant bore the burden of proving his legal mental illness by a preponderance of the evidence.[5] The defense presented expert testimony from one psychiatrist who concluded that appellant did not understand that killing his parents and siblings was wrong when he did so and that, therefore, he was legally insane. The state offered expert testimony from four psychiatrists. Of these four witnesses, two concluded that appellant was not legally insane at the time he committed the murders and two did not offer an opinion as to his legal mental illness. All of the experts agreed, however, that appellant suffered some form of mental illness or impairment.

Having been instructed regarding appellant's burden of proving his legal mental illness by a preponderance of the evidence, the jury returned verdicts of guilty as to four counts of murder in the first degree. The trial court then imposed four life sentences, pursuant to Minn.Stat. § 609.185

(1990), one for the murder of each victim. The court specified that three of these sentences would run consecutively, while the fourth would run concurrently to the last consecutive term.

## DISCUSSION

### I. Change of Venue

█ Appellant claimed the trial court violated his right to due process of law by denying his pretrial motion for a change of venue. He requested this court grant him a new trial.

In *State v. Buschkopf*, 373 N.W.2d 756 (Minn.1985), this court held that where no seated juror was challenged for cause and defense counsel exercised only 12 of 15 peremptory challenges, defendant was presumed "satisfied with the jury as selected, and [was without ground] to assert the necessity of a venue change." *Id.* at 769. Appellant's claim is nearly identical to that raised in *Buschkopf.* Each of the 63 potential jurors interviewed was questioned by both the defense and prosecution regarding exposure to pretrial publicity and media coverage related to appellant's case. Although all acknowledged some degree of exposure, none of the 15 individuals actually empaneled was challenged for cause on any ground, and in the course of voir dire appellant exercised only 14 of his 15 peremptory challenges. Appellant is therefore not entitled to a new trial.

Moreover, in denying appellant's motion the trial court indicated that it would "certainly entertain another motion for a change of venue," pursuant to Rule 25.02,

---

of not guilty shall be heard and determined first, and then the defense of the defendant's mental illness or deficiency. Minn.R.Crim.P. 20.02, subd. 6(2).

4. Defense counsel stated:
   The defense recognizes that under the current state of the law in Minnesota, specifically *State v. Bouwman,* that expert psychiatric testimony on the subject of premeditation in phase one of a bifurcated trial is inadmissible. Recognizing that, we wish to make an offer of proof that if called to testify in phase one, Dr. Carl Malmquist, a psychiatrist, would testify in essence that if we take things in an obvious but superficial manner, it would appear that the acts of David Brom were thought about

intermittently for months prior to their occurrence. However, that ignores complicated questions with respect to the nature of his thought processes, his capacity to act otherwise, and the origins and other contributing factors that led to his preoccupation with suicide and homicide. And that Dr. Malmquist has difficulty as a psychiatrist getting into the questions of premeditation.

5. "In Minnesota, a defendant must prove mental illness at the time of the crime by a preponderance of the evidence." *DeMars v. State,* 352 N.W.2d 13, 16 (Minn.1984) (citing *State v. Malley,* 285 N.W.2d 469, 472 n. 3 (Minn.1979)).

subd. 4 of the Minnesota Rules of Criminal Procedure, following jury selection.[6] Where a defendant is granted leave to renew his motion for change of venue immediately before trial, but declines to do so, he waives "any right he may have had to a change of venue." *State v. Knowlton*, 383 N.W.2d 665, 669 (Minn.1986); *see also State v. Fratzke*, 354 N.W.2d 402, 407 (Minn.1984) (where defendant is given opportunity to object to jurors after voir dire but does not do so, right to change of venue is waived). In *Knowlton*, the defendant's motion for a change of venue due to pretrial publicity was denied, but the trial court instructed him that he could renew his motion at the time of trial. The defendant did not do so. *Knowlton*, 383 N.W.2d at 669. Likewise, the trial court here emphasized that appellant would be permitted to move for a change of venue once jury selection was completed. Appellant, however, made no such motion. He is therefore not entitled to the relief he requests.

We note that the newspaper coverage appellant pointed to in support of his motion appeared 16 months before his trial. We have consistently held that a substantial interval of time between the publicity complained of and the trial date decreases the likelihood of juror prejudice owing to that publicity. *See State v. Fratzke*, 354 N.W.2d 402, 407 (Minn.1984) (seven-month interval lessened potential for juror prejudice due to adverse publicity); *State v. Swain*, 269 N.W.2d 707, 720 (Minn.1978) (lapse of six months decreased likelihood of pretrial prejudice); *State v. Hogan*, 297 Minn. 430, 437, 212 N.W.2d 664, 669 (1973) (three-month lapse decreased potential for pretrial prejudice due to media coverage). The trial court was therefore correct in giving substantial weight to the interval of time between the publicity appellant identified as prejudicial and the date of his trial.

**6.** Rule 25.02, Subd. 4. states: "If a motion for [change of venue] is made or if reconsideration of a prior denial is sought, it may be granted notwithstanding the fact that a jury has been sworn to try the case." Minn.R.Crim.P. 25.02, subd. 4.

## II. Psychiatric Testimony Regarding Premeditation

■ Appellant claimed that in prohibiting expert psychiatric testimony from the guilt phase of his bifurcated trial, the trial court precluded his defense as to the element of premeditation and thereby denied him due process of law.

Appellant's claim is not new to this court. In *State v. Bouwman*, 328 N.W.2d 703 (Minn.1982), we held expert psychiatric testimony inadmissible with respect to the elements of premeditation and intent. *Id.* at 706. Although appellant correctly indicates that *Bouwman* focused almost exclusively on the rationale for precluding such testimony as to the element of criminal intent, we do not read *Bouwman* to permit a meaningful distinction between intent and premeditation with respect to our prohibition of psychiatric testimony.

■ In *Bouwman*, we reasoned that psychiatric testimony is irrelevant as to intent because intent must almost always be inferred from the circumstances surrounding a particular crime. *See Bouwman*, 328 N.W.2d at 705. Essentially, the fact finder is presented with physical evidence related to a given act and asked to draw on its sensory perceptions, life experiences, and common sense to determine whether that act was indeed intentional. *Id.* Because psychiatric evidence "does not relate to the physical evidence upon which the jury is to determine the issue of intent," it is irrelevant to that issue and cannot be admitted either to prove or to disprove it. *Id.* Such evidence only becomes relevant when a criminal defendant's mental incapacity is actually put into issue—that is, in phase two of a bifurcated trial. *See* Minn.R.Crim.P. 20.02, subd. 6(2)–(4); *see also Bouwman*, 328 N.W.2d at 705.

■ *Bouwman* does not permit a different result with respect to premeditation. Although premeditation[7] involves "more

**7.** "For the purposes of [murder in the first degree], 'premeditation' means to consider, plan or prepare for, or determine to commit, the act referred to prior to its commission." Minn.Stat. § 609.18 (1990).

than an intent to kill," it, like intent,[8] is "subjective" and must be inferred from "the totality of the circumstances surrounding the crime." *State v. Ulm*, 326 N.W.2d 159, 162 (Minn.1982) (citing *State v. McCullum*, 289 N.W.2d 89, 91 (Minn. 1979)); *see also Bouwman*, 328 N.W.2d at 705. Indeed, both elements must be inferred from physical evidence related to a particular act. *See Bouwman*, 328 N.W.2d at 705. Thus, psychiatric testimony is no more relevant to determining premeditation than it is to the determination of intent.

Further, this court has followed *Bouwman* in rejecting subsequent challenges to the prohibition of psychiatric testimony as to the element of premeditation without developing a separate, premeditation-based rationale. *See State v. Hoffman*, 328 N.W.2d 709, 715–17 (Minn.1982) (psychiatric testimony confined to mental illness phase of trial and not admissible with respect to determining premeditation); *State v. Jackman*, 396 N.W.2d 24, 29 (Minn.1986) (affirming rejection of psychiatric testimony on the issue of premeditation). Appellant has not elucidated, and we do not now perceive, a means by which we might permit the introduction of psychiatric testimo-

ny as to premeditation without dismantling the entire bifurcated trial process. We therefore reiterate our conclusion in *Bouwman* that psychiatric testimony is inadmissible as to the element of premeditation.[9]

This court previously concluded that prohibiting psychiatric testimony from the guilt phase of a bifurcated trial does not violate a criminal defendant's right to due process of law. *See State v. Jackman*, 396 N.W.2d 24, 29 (Minn.1986). In *Jackman*, the trial court refused defendant Jackman's request to introduce psychiatric testimony regarding premeditation and intent during phase one of his bifurcated, first degree murder trial. *Id.* at 27. On appeal, Jackman argued that the trial court thereby denied him due process of law. *Id.* at 29. As does appellant here, he contended that precluding such testimony effectively denied him the opportunity to defend against the state's allegation that he intended and premeditated his conduct. *Id.* This court, however, rejected that claim, holding that prohibiting psychiatric testimony from the guilt phase of a bifurcated trial does not impinge the guarantee of due process of law. *Id.* Finding no reason to reach a different result here, we again

---

Premeditation means that defendant considered, planned, prepared for, or determined to commit the act before defendant committed it. Premeditation, being a process of the mind, is wholly subjective and hence not always susceptible to proof by direct evidence. It may be inferred from all the circumstances surrounding the event. It is not necessary that premeditation exist for any specific length of time. A premeditated decision to kill may be reached in a short period of time. However, an unconsidered or rash impulse, even though it includes an intent to kill, is not premeditated.
10 Minn.Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 11.02 (3d ed. 1990).

8. "['Intent'] means that the actor either has a purpose to do the thing or cause the result specified or believes that the act, if successful, will cause that result." Minn.Stat. § 609.02, subd. 9(4) (1990). "In order to have had an intent to kill, defendant must have acted with the purpose of causing death (or defendant must have believed that the act would have that result)." 10 Minn.Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 11.02 (3d ed. 1990).

9. The dissent suggests that the expert testimony appellant sought to introduce "was clearly rele-

vant in determining the absence or presence of the requisite premeditation, under the circumstances of this case." In his offer of proof to the trial court, however, appellant's counsel stated "that Dr. Malmquist has difficulty as a psychiatrist getting into the questions of premeditation." Thus, while a different trial record might well persuade us otherwise, we cannot conclude on the record before us that the proffered expert testimony was so clearly relevant to the issue of premeditation as to mandate its admission.

Further, we do not quibble with the dissent as to the incidence of mental impairment and agree "that evidence of mental impairment is well within the common experience of the average person and capable of lay understanding." We cannot agree, however, that experience with the behavioral manifestations of mental impairment necessarily entails experience with the technical jargon of psychiatry. The jurors who convicted appellant were presented extensive evidence as to his conduct leading up to the morning of February 18, 1988. We are unwilling on the record before us to conclude that the expert testimony appellant offered to introduce would have assisted those jurors in determining whether appellant premeditated that conduct.

conclude that prohibiting a criminal defendant from introducing testimony we have consistently deemed irrelevant, *see Bouwman*, 328 N.W.2d at 705, does not violate that individual's right to due process.

In applying the due process clause of the Minnesota Constitution, Minn. Const. art. I, § 7, this court is bound by decisions of the United States Supreme Court regarding what is prohibited by the due process clause of the fourteenth amendment to the United States Constitution. *See State v. Oman*, 261 Minn. 10, 21, 110 N.W.2d 514, 522–23 (1961). The United States Supreme Court has not recently addressed the constitutionality of excluding psychiatric testimony from the guilt phase of a bifurcated trial. However, in 1929 and again in 1942, it dismissed due process challenges to a bifurcated trial procedure similar to that presently used in Minnesota for want of a substantial federal question. *See Troche v. California*, 280 U.S. 524, 50 S.Ct. 87, 74 L.Ed. 592 (1929); *Coleman v. California*, 317 U.S. 596, 63 S.Ct. 162, 87 L.Ed. 487 (1942). These dismissals, though summary, operate as decisions on the merits of the claims raised, *see Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975), and indicate that a bifurcated trial procedure in which psychiatric testimony is inadmissible on the issue of premeditation does not violate the federal due process guarantee.[10]

### III. Evidence of Mental Illness

Appellant claimed that he demonstrated his legal mental illness by a preponderance of the evidence and that his convictions should therefore be reversed.

■ A defendant must demonstrate that "at the time of committing the alleged criminal act [she or he] was laboring under such defect of reason, from [mental illness or deficiency] as not to know the nature of the act, or that it was wrong" in order to be excused from criminal responsibility because of mental illness. Minn.Stat. § 611.026 (1990).[11] "In Minnesota, a defendant must prove mental illness at the time of the crime by a preponderance of the evidence." *DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984) (citing *State v. Malley*, 285 N.W.2d 469, 472 n. 3 (Minn.1979)). Where a criminal defendant who raised the defense of mental illness at trial challenges his conviction, "[t]his court conducts 'a rigorous review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the [fact finder] to reach its conclusion.'" *Id.* (quoting *State v. Mytych*, 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972)).

■ This court has consistently held that the issue of legal mental illness is a question for the finder of fact to resolve. *See State v. Gore*, 451 N.W.2d 313, 316 (Minn.1990) (expert opinion testimony did not compel verdict of not guilty by reason of mental illness); *State v. Schneider*, 402 N.W.2d 779, 786 (Minn.1987) (legal mental illness is a jury question); *State v. Rawland*, 294 Minn. 17, 45, 199 N.W.2d 774, 789 (1972) (ultimate determination as to legal mental illness rests with the fact finder). As well, we have granted broad deference to the fact finder in determining the appropriate weight to assign expert psychiatric testimony. *See DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984) (fact finder not bound by expert testimony even where that testimony supports finding of legal mental

---

**10.** We note that in reviewing federal due process challenges to bifurcated trial procedures similar to Minnesota's, three United States Courts of Appeals have upheld those procedures. *See Campbell v. Wainwright*, 738 F.2d 1573, 1581 (11th Cir.1984), *cert. denied*, 475 U.S. 1126, 106 S.Ct. 1652, 90 L.Ed.2d 195 (1986) (noting the questionable utility of psychiatric evidence as to premeditation and upholding Florida's bifurcated procedure); *Meunch v. Israel*, 715 F.2d 1124 (7th Cir.1983), *cert. denied*, 467 U.S. 1228, 104 S.Ct. 2682, 81 L.Ed.2d 878 (1984)

(upholding Wisconsin's bifurcated trial procedure that precludes psychiatric testimony from guilt phase); *Wahrlich v. Arizona*, 479 F.2d 1137 (9th Cir.1973) *cert. denied*, 414 U.S. 1011, 94 S.Ct. 375, 38 L.Ed.2d 249 (1973) (upholding Arizona's bifurcated procedure and noting that psychiatric testimony is not probative of intent).

**11.** Appellant chose not to challenge the increasingly controversial *M'Naghten* mental illness standard, thus we do not address the validity of that standard.

illness); *State v. Linder*, 304 N.W.2d 902, 907 (Minn.1981) (fact finder is the judge of the credibility of expert testimony regarding mental illness).

■ At trial, appellant offered the expert opinion of one psychiatrist who testified that appellant did not understand that killing his family was wrong at the time he did so. In response, the state offered expert testimony from two psychiatrists who concluded that appellant knew what he was doing at the time of the murders and knew that it was wrong. Further, the state introduced testimony from two other psychiatrists who, while not reaching an ultimate conclusion as to appellant's legal mental illness, substantially undercut the testimony of appellant's psychiatric expert. We do not agree with appellant that the evidence of his legal mental illness as defined by Minn.Stat. § 611.026 (1990) viewed most favorably toward a finding of guilt compels a verdict of not guilty due to mental illness. We therefore affirm his convictions.

#### IV. Imposition of Consecutive Life Sentences

Appellant contends the trial court abused its discretion in imposing three of his four life sentences consecutively.

■ Whether to impose concurrent or consecutive multiple life sentences for first degree murder falls within the discretion of the trial court. Minn.Stat. § 609.15 (1990); *see also Bangert v. State*, 282 N.W.2d 540, 547 (Minn.1979) (construing Minn.Stat. § 609.15 to permit imposition of consecutive life sentences). When reviewing imposition of consecutive life sentences, this court considers whether consecutive sentences "are commensurate with culpability and not an exaggeration of defendant's criminality." *Bangert*, 282 N.W.2d at 547.

■ In *Bangert*, we affirmed consecutive life sentences where the defendant shot and killed two victims while they slept.

*Id.* at 543. Similarly, in *State v. Olson*, 291 N.W.2d 203 (Minn.1980), this court concluded that consecutive life sentences were indeed appropriate where a defendant "with premeditation methodically burned three people to death." *Id.* at 208; *see also State v. Marquardt*, 294 N.W.2d 849, 851 (Minn.1980) (consecutive sentences appropriate where seven victims were shot). Like the defendants in both *Bangert* and *Olson*, appellant was convicted for the premeditated murder of multiple victims. After hearing the testimony offered and observing the witnesses who testified, the trial court concluded that three consecutive and one concurrent life terms were appropriate. We find no ground on which to conclude that three consecutive life sentences exaggerate either appellant's culpability or his criminality. We therefore hold that the trial court did not abuse its sentencing discretion and affirm the sentences it imposed.[12]

#### V. Credit for Pre–Trial Detention

■ Appellant claimed, and the state agreed, that he is entitled to credit against his life sentences for the time he was detained prior to trial.

The Rules of Criminal Procedure state that the sentencing court "[s]hall assure that the record accurately reflects all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed. Such time shall be automatically deducted from the sentence and the term of imprisonment.…" Minn. R.Crim.P. 27.03, subd. 4(B). In *Escobedo v. Oleisky*, 339 N.W.2d 263 (Minn.1983), this court concluded that Rule 27.03 requires that a juvenile defendant certified for prosecution as an adult receive credit for time spent in juvenile detention awaiting certification. Appellant was detained from his arrest through his sentencing in connection with the offenses for which he was convicted. *See State v. Brown*, 348 N.W.2d 743, 748 (Minn.1984) (time spent in out-of-state custody in connection with Minnesota

---

**12.** Although we are not prepared to impose further restrictions on the exercise of sentencing discretion, we note that both the defendant sentenced and the public would benefit from an explanation on the record of the factors considered in imposing consecutive, rather than concurrent, life sentences.

charges entitles defendant to credit for that time). He is therefore entitled to credit against each of his life sentences for all of the time he was detained. We order his sentences to be modified accordingly.

WAHL, Justice, dissenting.

I respectfully dissent.

Substantial constitutional considerations require reconsideration of our decision in *State v. Bouwman*, 328 N.W.2d 703 (Minn. 1982) which prohibits a criminal defendant from introducing expert psychiatric opinion evidence of mental abnormality or mental disorder to negate the requisite mens rea, in that case intent and premeditation. As the Supreme Court of Colorado has aptly stated, "A rule [of evidence] precluding the defendant from contesting the culpability element of the charge would render the prosecution's evidence on that issue uncontestable as a matter of law, in derogation of the presumption of innocence and the constitutional requirement of prosecutorial proof of guilt beyond a reasonable doubt." *Hendershott v. People*, 653 P.2d 385, 391 (Colo.1982); *e.g., Sandstrom v. Montana*, 442 U.S. 510, 520–24, 99 S.Ct. 2450, 2457–59, 61 L.Ed.2d 39 (1979); *Morissette v. United States*, 342 U.S. 246, 274–75, 72 S.Ct. 240, 255–56, 96 L.Ed. 288 (1952). Requiring the prosecution to establish the culpable mental state beyond a reasonable doubt while, at the same time, prohibiting the defendant from presenting evidence to contest this issue is also a violation of due process. *Hendershott v. People*, 653 P.2d at 391.[1]

Our decision in *Bouwman* misconceived the nature of the defendant's right to present evidence to negate an element of the offense charged:

> * * * The defendant has the right to offer evidence which disputes the physical facts upon which the inference of the fact of intent is sought to be established by the prosecution. However, psychiatric evidence is of no value at this part of the trial since it does not relate to the physical evidence upon which the jury is to determine the issue of intent. Rather, such expert testimony relates to the mental capacity of the defendant and is properly part of defendant's case wherein he must establish the defense of mental illness by the appropriate standard. (Emphasis added.)

*Bouwman*, 328 N.W.2d at 705.

As the *Pohlot* court has noted, "the mere fact that a defendant has the right to introduce psychiatric evidence in support of the affirmative defense of insanity does not justify barring the evidence from negating the government's case in chief." *U.S. v. Pohlot*, 827 F.2d at 901.

> * * * The Supreme Court has indicated that although a state may constitutionally shift the burden of proving insanity to the defendant, *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), it did not sanction, and probably would not sanction, a jury charge that prevented a jury from considering evidence of mental abnormality in determining whether the state had proven premeditation and deliberation beyond a reasonable doubt. In upholding the verdict, the Court stated: *"It is apparent that the jury might have found appellant to have been mentally incapable of the premeditation and deliberation required to support a first degree murder verdict * * * and yet not have found him to have been legally insane."* *Id.* at 794, 72 S.Ct. at 1005 (Emphasis added.).

*Id.*

Both the ABA Criminal Justice Mental Health Standards, Standard 7–6.2 (1989), and the ALI Model Penal Code § 4.02(1) provide that evidence concerning a defendant's mental condition should be admissible at a criminal trial whenever it is relevant to prove that a defendant did or did not have the state of mind required for the

---

1. The Third Circuit Court of Appeals, in *U.S. v. Pohlot*, 827 F.2d 889, 903 (3rd Cir.1987), a case challenging an interpretation of the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17, which would either explicitly or implicitly bar a defendant from introducing evidence of mental abnormality on the issue of mens rea, was unwilling to create a rule of evidence that would raise such substantial constitutional issues in the absence of explicit congressional direction.

offense charged. This relevant evidence may often come in the form of properly qualified expert testimony. *See* Criminal Justice Mental Health Standards, Standard 7–6.2 commentary at 348 (1989).[2]

The defendant, in the case before us, admitted he committed the acts which resulted in the four deaths but sought to introduce expert psychiatric opinion to negate the element of premeditation. Premeditation, as this court has held, involves, in addition to the mere intent to kill, a pre-existing reflection and deliberation. *See e.g., State v. Ulm*, 326 N.W.2d 159 (Minn.1982); *State v. Lemire*, 315 N.W.2d 606 (Minn.1982). We have stated that inferences of pre-existing reflection and deliberation are properly drawn only from physical evidence. *Bouwman*, 328 N.W.2d at 705. It cannot be said, however, that direct inquiries into impaired mental states have no relevance or value in determining whether an individual did, in fact, reflect or deliberate on an act. It is conceivable that a person whose actions are steered by powerful mental aberrations may leave behind physical evidence indicating a pre-existing reflection and deliberation, but that when the mental condition is itself directly explored, the jury may find the inference of premeditation substantially rebutted. Dr. Malmquist's proffered testimony was clearly relevant in determining the absence or presence of the requisite premeditation, under the circumstances of this case.[3]

A finding of premeditation is to be based upon the circumstances as a whole. *State v. McCullum*, 289 N.W.2d 89, 92 (Minn. 1979). Defendant's mental impairment is as much a part of those circumstances as intoxication, infancy, senility and other conditions recognized by this court as proba-

tive of defendant's state of mind. Although to some extent, conditions such as intoxication or infancy are capable of quantification, they, like mental illness, can only indicate the degree to which a condition impaired defendant's mental processes[4]. All of these conditions acknowledge a mental disability of some type and all are probative as to whether a defendant formulated the required mens rea.

This court, in *Bouwman*, distinguished evidence of intoxication and infancy from evidence of mental impairment, adopting the reasoning of the ninth circuit:

> Exposure to the effects of age and of intoxicants upon state of mind is a part of common human experience which fact finders can understand and apply; indeed, they would apply them even if the state did not tell them they could. The esoterics of psychiatry are not within the ordinary ken. The differences are sufficiently manifest to thwart constitutional attack.

*Bouwman*, 328 N.W.2d at 706 (quoting *Wahrlich v. State*, 479 F.2d 1137, 1138 (9th Cir.1973)).

If jurors' inability to comprehend psychiatric testimony was ever a compelling distinction, it has no current application. Statistics indicate that one in seven adults in the United States suffers from a diagnosable mental disorder and is in need of professional treatment in any six month period of time. Regier, MD, et al, *One-Month Prevalence of Mental Disorders in the United States*, 45 Archives Gen'l Psychiatry 977, 981, Table 4 (November 1988). One in five adults in this country suffers from diagnosable mental illness at some point in their life time. *Id.* In a recent

---

**2.** The normal requirements for expert opinion testimony include appropriate educational credentials and evaluation techniques and a showing that the opinion is based on "specialized knowledge which can assist the factfinder." Criminal Justice Mental Health Standards, Standard 7–3.10 introduction to commentary (1989).

**3.** Commentators have recognized that a mental illness may negate the culpability element of a greater degree of a homicide offense but not of a lesser one, 1 Robinson, Criminal Law Defenses Sec. 64(a) at 273 (1984), and that if a subjec-

tive state of mind is an element of the crime, any testimony as to its existence or absence is relevant evidence; Arenella, *The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage*, 77 Colum. L.Rev. 828, 833 (1977).

**4.** One person with a blood alcohol level of .25 may be able to formulate specific intent, another incapable. One eight-year-old child may intend the consequences of her actions, another may not.

study, one in three adults in the United States reported that they or someone in their family have sought help from a psychiatrist or psychologist at sometime in their lives. Executive Summary, *Public Attitudes Toward People with Chronic Mental Illness*, Prepared for The Robert Wood Johnson Foundation on Chronic Mental Illness, at 2 (April 1990). In light of these statistics, there is little doubt that evidence of mental impairment is well within the common experience of the average person and capable of lay understanding.

Moreover, the jury, in the insanity phase of the bifurcated trial, relies on expert psychiatric testimony to determine whether defendant has proved by a preponderance of the evidence that at the time of the offense he or she "was laboring under such a defect of reason * * * as not to know the nature of the act, or that it was wrong." Minn.Stat. § 611.026 (1990). The "esoterics" of psychiatry are no more beyond the ken of the jurors when they determine the presence or absence of the required mens rea in the guilt phase of the trial than when they determine the presence or absence of legal sanity in the insanity phase. We tolerate the "battle of experts" in other areas of the law but allow our distaste of such a battle to limit the rights of criminal defendants.

In *Bouwman* we mistakenly equated the evidentiary doctrine providing for the admission of evidence of mental abnormality to negate mens rea with the doctrine of diminished responsibility. "Diminished responsibility," as the Commentary to Standard 7–6.2 describes it, is used most often to refer to sentencing rules that "accord mitigating impact to mental abnormality falling short of mental nonresponsibility [insanity] and not negating mens rea."

Criminal Justice Mental Health Standards, Standard 7–6.2 at 352.

It is argued that admitting non-insanity psychiatric evidence to negate the mens rea element of the crime will do violence to the system of bifurcation mandated by Minn.R. Crim.P. 20.02, subd. 2. Prior to the *Bouwman* decision, however, the Minnesota Rules of Criminal Procedure, as adopted in 1975, afforded a unitary or bifurcated trial, at the option of the defendant. The rules were amended in 1984 to accommodate the holdings of *Bouwman* and *State v. Hoffman*, 328 N.W.2d 709 (Minn.1982), released the same day, which essentially mandated bifurcation. Reversal of *Bouwman*, on constitutional grounds, would signal the return to a rule which allows the defendant to make the critical and strategic decision whether to bifurcate the insanity phase of the trial.

I would reverse the convictions and remand for a new trial at which expert testimony as to defendant's state of mind at the time of the killings in order to negate the state's claim that he acted with premeditation would be admitted. This decision, as defendant's counsel has so eloquently argued, would constitute nothing more than the reaffirmation of several concepts basic to our system of jurisprudence: the presumption of innocence and the due process requirement that the state prove each element of the crime beyond a reasonable doubt and the defendant's right to present relevant evidence in his defense.