STATE of Minnesota, Respondent,

v.

Darren P. ODELL, Appellant.

No. A03–41.

Supreme Court of Minnesota.

March 18, 2004.

Roy G. Spurbeck, Asst. State Public Defender, Minneapolis, for appellant.

Mike Hatch, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Robert D. Goodell, Asst. Anoka County Atty., Anoka, for respondent.

## OPINION

GILBERT, Justice.

Darren Paul Odell (appellant) was indicted on one count of first-degree murder

under Minn.Stat. § 609.185(a)(1) (2002) as a result of the shooting death of his father, Dennis Raymond Odell. At trial, appellant pleaded not guilty and not guilty by reason of mental illness under Minn.Stat. § 611.026 (2002),[1] commonly referred to as the *M'Naghten* rule, which has long been part of Minnesota law. *See Daniel M'Naghten's Case,* 10 Clark & Finelly 200, 8 Eng. Rep. 718 (1843); *State v. Linder,* 304 N.W.2d 902, 907, n. 4 (Minn.1981) (stating: "The rule was first adopted in Minnesota in *State v. Gut,* 13 Minn. 341 (Gil.315) (1868), and enacted into statute in 1885"). Appellant waived his right to a jury trial and at the conclusion of the guilt phase of the trial,[2] the court found that appellant acted with premeditation and intent to kill his father. This finding was not appealed. After the mental illness phase, the trial court found that appellant failed to sustain his burden in proving a mental illness defense and sentenced him to life in prison. On direct appeal, appellant contests the trial court's ruling with respect to the *M'Naghten* rule. We affirm the trial court's decision.

On Sunday, April 23, 2000, appellant attended Easter dinner at his great aunt's house. While his father was seated at the dining room table, appellant retrieved a 9mm Beretta handgun from his truck. When he returned, appellant waited until some of the guests cleared the dining room area. While two guests remained seated beside his father, appellant fired three bullets into his father's chest, which resulted in fatal wounds. Immediately following the shooting, appellant fled the crime scene, but returned shortly thereafter and peacefully surrendered himself to police. On appeal, appellant admits to shooting his father, but challenges the trial court's decision as to his mental illness.

At trial, extensive evidence relevant to appellant's mental state was introduced. In phase two of the trial, the court found the following doctors, who evaluated appellant, qualified to render expert witness testimony: Dr. James H. Gilbertson was called to testify for the defense, Dr. Dallas D. Erdmann was appointed by the court, and Drs. Michael G. Farnsworth and Kristine Kienlen were called to testify for the state.[3] After initial interviews with appellant, all four doctors agreed that appellant did not qualify for the *M'Naghten* defense. Although Drs. Gilbertson and Erdmann diagnosed appellant as suffering from schizophrenia at the time of the murder, both believed appellant understood the na-

1. Minnesota's legal insanity statute reads:
   No person shall be tried, sentenced, or punished for any crime while mentally ill or mentally deficient so as to be incapable of understanding the proceedings or making a defense; but the person shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act the person was laboring under such a defect of reason, from one of these causes, as not to know the nature of the act, or that it was wrong.
   Minn.Stat. § 611.026.

2. A defendant who pleads not guilty by reason of mental illness is afforded a bifurcated trial under Minn. R.Crim. P. 20.02, subd. 6(2). The first phase of the trial determines whether the state has met its burden of proof as to the defendant's guilt. If the defendant is found guilty, the second phase determines whether the defendant has sustained the burden of establishing the mental illness defense. *See* Minn. R.Crim. P. 20.02, subd. 6(4)(a).

3. On May 1, 2001, Drs. Erdmann and Farnsworth examined appellant to determine whether he was competent to proceed to trial. Both doctors concluded that as a result of appellant's mental illness, he was incapable of understanding the proceedings or participating in his defense. Thereafter, appellant was committed to the Minnesota Security Hospital in St. Peter, Minnesota for treatment. In the fall of 2002, Odell was found competent to proceed to trial.

ture and wrongfulness of shooting his father, yet elected to engage in the criminal behavior regardless of the consequences. Drs. Farnsworth and Kienlen agreed that appellant was suffering from a mental illness at the time of the shooting and concluded, as Drs. Gilbertson and Erdmann did, that appellant did not satisfy the *M'Naghten* rule, that is, appellant understood the nature and wrongfulness of his acts.

Following the first set of mental evaluations, appellant's sister, while cleaning appellant's house, found a popcorn tin containing several post-it notes and other writings apparently authored by appellant. The contents of the notes and writings contained bizarre references to celebrities Reba McIntyre and Elvis Presley, and numerology, but did not reference appellant's relationship with or animus toward his father. Subsequently, counsel stipulated to and the trial court granted appellant's request to be reexamined.

Based on a review of the post-it notes, updated medical reports, and a second interview with appellant, Drs. Gilbertson and Erdmann revised their opinions and concluded that appellant did not know it was morally wrong to kill his father. Therefore, Drs. Gilbertson and Erdmann believed appellant met the requirements of the *M'Naghten* rule. However, Dr. Farnsworth did not waver from his original conclusion that, at the time of the offense, appellant knew the nature and wrongfulness of the act and did not have the *M'Naghten* defense available to him. Dr. Kienlen did not prepare a second report, but testified at trial that after reviewing the post-it notes, medical records, and a videotape of Dr. Farnsworth's second interview with appellant, she saw no reason to deviate from her initial opinion that appellant did not have the *M'Naghten* defense available to him.

■ The *M'Naghten* rule requires that in order to be excused from criminal liability by reason of insanity, a defendant must show that he either did not know the nature of his act or that the act was wrong. *Davis v. State*, 595 N.W.2d 520, 526 (Minn. 1999); *see also* Minn.Stat. § 611.026. "[A] defendant must prove mental illness at the time of the crime by a preponderance of the evidence." *DeMars v. State*, 352 N.W.2d 13, 16 (Minn.1984).

■ The narrow question before this court is whether the evidence presented at trial was sufficient to prove, by a preponderance of the evidence, that appellant did not understand the wrongfulness of his acts on April 23, 2000. The parties do not dispute that appellant suffered from a mental illness at the time of the offense. Further, it is undisputed that appellant knew that he was shooting his father and that such a shooting would result in his father's death. Therefore, appellant concedes that he knew the nature of his actions.

■ On appeal, "[t]his Court conducts 'a rigorous review of the record to determine whether the evidence, direct and circumstantial, viewed most favorably to support a finding of guilt, was sufficient to permit the trial court to reach its conclusion.'" *Id.* (quoting *State v. Mytych*, 292 Minn. 248, 252, 194 N.W.2d 276, 279 (1972)). When reviewing a defendant's challenge to sufficiency of evidence, this court cannot retry facts, but must assume the fact-finder—here, the trial court—believed the state's witnesses and disbelieved any contradictory evidence. *State v. Johnson*, 568 N.W.2d 426, 435 (Minn.1997) (citing *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978)). This court has "held that the issue of legal mental illness is a question for the finder of fact to resolve." *State v. Brom*, 463 N.W.2d 758, 764 (Minn. 1990). Broad deference is granted "to the

fact-finder in determining the appropriate weight to assign expert psychiatric testimony." *Id.* (citing *DeMars,* 352 N.W.2d at 16).

In the trial court's extensive findings of fact and verdict, it carefully considered the evidence presented by all four experts and determined the believability and weight to be given to each expert's testimony. Accordingly, the court decided to give greater weight to the opinions of Drs. Farnsworth and Kienlen because their reports were more consistent with appellant's behavior and belief system. The court could not reconcile the opinions of Drs. Gilbertson and Erdmann with several facts of the case; namely, that on April 23, 2000, immediately before and after the murder, appellant was able to communicate and interact with others normally. Further, the court questioned some of the underpinnings of Dr. Erdmann's revised analysis and found that in his first and second opinions Dr. Erdmann had relied on similar facts to support divergent conclusions. Finally, the court concluded that appellant had proved by a preponderance of the evidence that, at the time of the murder, he was suffering from a severe mental illness, but that appellant had failed to prove that because of his mental illness he did not understand the nature of his act or that the act constituting the offense was wrong.

Upon a rigorous review of the record, noting the broad deference granted to the fact-finder in determining the appropriate weight to assign expert psychiatric testimony and viewing the evidence most favorably to support a finding of guilt, we hold that sufficient evidence existed to support the trial court's conviction of appellant.

Affirmed.