STATE OF MINNESOTA

IN SUPREME COURT

A22-1570

Court of Appeals                                                    Procaccini, J.
                                                              Took no part, Gaïtas, J.
State of Minnesota,

                    Respondent,

vs.                                                        Filed: August 28, 2024
                                                        Office of Appellate Courts
Brandon Stuart Moore,

                    Appellant.

_____

Keith Ellison, Attorney General, Ed Stockmeyer, Assistant Attorney General, Saint Paul, Minnesota, and

Matthew Haugen, Chippewa County Attorney, Montevideo, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

The State presented evidence sufficient to prove that a firearm was "within immediate reach" of the defendant under Minnesota Statutes section 152.021, subdivision 2b(1) (2022), where the firearm was in the locked glove compartment of a car, the defendant was sitting in the driver's seat of the car, and the key to the locked glove compartment was in the ignition.

Affirmed.

1

PROCACCINI, Justice.

This case concerns what it means for a firearm to be "within immediate reach" of a person under the statute that criminalizes aggravated first-degree controlled substance sale and possession, Minnesota Statutes section 152.021, subdivision 2b(1) (2022). During a traffic stop, law enforcement officers found more than 110 grams of methamphetamine and a handgun in the locked glove compartment of the car that appellant Brandon Moore was driving. Respondent State of Minnesota charged Moore with two counts of aggravated first-degree controlled substance crime. To convict Moore of that crime, the State had to prove that Moore (1) possessed at least 100 grams of methamphetamine, and (2) possessed a firearm on his person or "within immediate reach." A jury found Moore guilty of the charges.

Moore appealed, asserting that the evidence was insufficient for the jury to find that the firearm was "within immediate reach" because the handgun was in the locked glove compartment of Moore's car and therefore was not instantly accessible. The court of appeals rejected Moore's interpretation of "within immediate reach" and affirmed Moore's conviction. Because we agree that "within immediate reach" does not require instant accessibility, we conclude that the evidence was sufficient to prove that the firearm was within Moore's immediate reach, and we affirm the decision of the court of appeals.

**FACTS**

In the late evening of January 24, 2022, while on routine patrol, Granite Falls Police Officer Kyler Jelen observed Brandon Moore driving a 2004 Chevy Impala sedan with

expired vehicle registration tabs on a highway. Officer Jelen activated his squad car's emergency lights and pursued the Impala. Because Moore did not pull over immediately, Officer Jelen activated his car's siren. Moore continued driving, and Officer Jelen called for support over the radio. Officer Jelen pursued Moore for approximately three miles before Moore pulled over.

Officer Jelen—joined by a Chippewa County Deputy Sheriff, who arrived separately at the scene—did not immediately approach Moore's car. Instead, Officer Jelen repeatedly yelled out to Moore to turn the car off and put his hands up and out of the window. Moore put his hands up but did not otherwise comply with the demands. Granite Falls Police Officer Dan Lewis and a Yellow Medicine County Deputy Sheriff then arrived on the scene.

After ten to fifteen minutes of back-and-forth yelling and repeated unsuccessful attempts to persuade Moore to comply with the officers' commands, the officers approached Moore's car. One officer approached the passenger side to check for weapons and did not see any weapons in plain view. The other officers then approached the driver side, removed Moore from the vehicle, and Officer Jelen placed him under arrest. Officer Jelen searched Moore, finding over six grams of methamphetamine in Moore's pockets. The other officers searched Moore's car. In the center console, the officers found approximately $3,400 in cash. Officer Lewis searched the front passenger area and discovered that the passenger-side glove compartment was locked. According to Officer Lewis, the ignition key was "sitting right on the front seat by the armrest," and he used it to unlock the glove compartment. Inside the glove compartment, Officer Lewis found a

3

handgun with several rounds of ammunition and a plastic bag containing more than 110 grams of methamphetamine. At trial, Officer Lewis testified that the glove compartment was "within reach" of the driver's seat.

The State of Minnesota charged Moore with aggravated first-degree controlled substance crime (sale), *see* Minn. Stat. § 152.021, subds. 1(1), 2b(1) (2022), and aggravated first-degree controlled substance crime (possession), *see* Minn. Stat. § 152.021, subds. 2(a)(1), 2b(1) (2022). The State also charged Moore with ineligible possession of a firearm, *see* Minn. Stat. § 624.713, subd. 1(2) (2022). Both counts of aggravated first-degree controlled substance crimes required the State to prove that Moore possessed a firearm "within immediate reach." Minn. Stat. § 152.021, subd. 2b(1).

Following a one-day trial, the jury found Moore guilty as charged. The district court entered convictions only on the guilty verdicts for ineligible possession of a firearm and aggravated first-degree controlled substance crime for sale, determining that aggravated first-degree controlled substance crime for possession was a lesser-included offense. The district court sentenced Moore to 98 months in prison.

Moore appealed his conviction, arguing that the evidence was insufficient to support his conviction for aggravated first-degree controlled substance crime because the State failed to prove that he was "within immediate reach" of a firearm.[1] *See State v. Moore*, No. A22-1570, 2023 WL 6799617, at *1 (Minn. App. Oct. 16, 2023). The court of appeals affirmed Moore's conviction. *Id.* The court of appeals reasoned that the phrase "within

---

[1] Moore appealed other issues to the court of appeals, but those issues are not before us.

4

immediate reach" is ambiguous because the common understanding of "immediate reach" includes two meanings: a temporal meaning and a spatial meaning. *Id.* at *4. Relying on legislative history and related case law on searches incident to arrest, the court of appeals concluded that "immediate reach" requires the State to prove that "a firearm is accessible by touching because the defendant's access is 'without delay' and 'close at hand.' " *Id.* at *5. Based on that interpretation, the court of appeals held that the evidence was sufficient to prove that the firearm was within Moore's immediate reach "[b]ecause Moore was in the driver's seat and the key to the glovebox was in the sedan." *Id.* at *6.

Moore petitioned this court for review of several issues. We granted review of just one issue: whether the evidence was sufficient to prove that the handgun in the locked passenger-side glove compartment was within Moore's "immediate reach" when he was sitting in the driver's seat of the car.

**ANALYSIS**

Moore contends that the evidence supporting his conviction for aggravated first-degree controlled substance crime is insufficient because the handgun in the locked glove compartment of his car was not "within immediate reach" as required under Minnesota Statutes section 152.021, subdivision 2b(1). "A claim of insufficient evidence that turns on the meaning of the statute under which the defendant was convicted presents an issue of statutory interpretation that we review de novo." *State v. Stone*, 995 N.W.2d 617, 621–22 (Minn. 2023). After we interpret the statute, we analyze the record to determine whether the evidence, viewed in the light most favorable to the verdict, was

5

sufficient to permit the jury's verdict. *State v. Powers*, 962 N.W.2d 853, 857–58 (Minn. 2021).

A.

We turn first to the parties' dispute about the meaning of "within immediate reach" under Minnesota Statutes section 152.021, subdivision 2b(1). The goal of statutory interpretation is to ascertain and effectuate the intent of the Legislature. *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019); *see* Minn. Stat. § 645.16 (2022). When the meaning of a statute is clear and unambiguous, the plain language controls. *Pakhnyuk*, 926 N.W.2d at 920. But if the text of the statute is ambiguous, we may apply the canons of construction to determine the Legislature's intent. *State v. Henderson*, 907 N.W.2d 623, 625 (Minn. 2018). Accordingly, when interpreting a statute, the first step is to determine whether the plain language of the statute is ambiguous. *State v. Degroot*, 946 N.W.2d 354, 360 (Minn. 2020). We discern ambiguity in a statute "only if, as applied to the facts of the particular case, [the words of the statute are] susceptible to more than one reasonable interpretation." *Lapenotiere v. State*, 916 N.W.2d 351, 359 (Minn. 2018) (quoting *Sorchaga v. Ride Auto, LLC*, 909 N.W.2d 550, 555 (Minn. 2018)) (internal quotation marks omitted)).

We begin with the relevant text of the aggravated first-degree controlled substance crime statute:

> A person is guilty of aggravated controlled substance crime in the first degree if the person violates subdivision 1, clause (1), (2), (3), (4), or (5), or subdivision 2, paragraph (a), clause (1), (2), or (3), and the person or an accomplice sells or possesses 100 or more grams or 500 or more dosage units of a mixture containing the controlled substance at issue and:

6

(1) *the person or an accomplice possesses* on their person or *within immediate reach*, or uses, whether by brandishing, displaying, threatening with, or otherwise employing, *a firearm* . . . .

Minn. Stat. § 152.021, subd. 2b(1) (emphasis added).

The crux of the parties' dispute is whether the phrase "within immediate reach" requires that a firearm be *instantly* accessible upon reaching out. Moore argues that the phrase unambiguously requires such instant access, and therefore the handgun in the locked glove compartment of his car was not "within immediate reach." The State disagrees, arguing that the phrase is ambiguous and that the canons of construction demonstrate that an interpretation requiring instant accessibility is inconsistent with legislative intent.

Because the phrase "within immediate reach" is not defined within section 152.021 or elsewhere in the criminal code, we may look to dictionary definitions to determine the phrase's plain meaning. *Powers*, 962 N.W.2d at 858; *see* Minn. Stat. § 645.08(1) (2022). The parties agree on the meaning of "within" and "reach." We agree that "within" generally means "[n]ot exceeding the limits or extent of in distance or time," and "reach" is defined as "[t]he extent or distance something can reach." *The American Heritage Dictionary of the English Language* 1990, 1463 (5th ed. 2011). We therefore focus our analysis on Moore's specific assertion that the term "immediate" in this context "means to reach the firearm instantly, without delay."

Some dictionaries support Moore's view, defining "immediate" as "made or done at once: *instant*." *Webster's Third International Dictionary* 1129 (2002) (emphasis added); *see also Immediate*, *Black's Law Dictionary* (12th ed. 2024) (defining "immediate" as "[o]ccurring without delay; instant"). But another dictionary defines "immediate" more

7

broadly as "of or near the present time" and, absent any temporal reference, as "[c]lose at hand; near." *The American Heritage Dictionary of the English Language* 878 (5th ed. 2011). In the context of firearm possession, these conflicting definitions demonstrate that "within immediate reach" could reasonably be understood to require instant access, to require ready access within a broader timeframe, *or* to require only physical access regardless of timing. Accordingly, the phrase, as used in section 152.021, subdivision 2b(1), is ambiguous.

The court of appeals likewise concluded that "within immediate reach" is ambiguous and, relying on legislative history and case law on searches incident to arrest, interpreted the phrase to include both a spatial component (requiring close physical proximity) and a temporal component (requiring close temporal proximity). *Moore*, 2023 WL 6799617, at *4. The State asks us to reject that interpretation and instead adopt one that requires *only* close spatial proximity. But we need not fully define "within immediate reach" to resolve this appeal. Moore's argument relies on the notion that the phrase has a temporal component that requires *instant* access. There is no dispute that the evidence was sufficient to convict Moore under any other reasonable interpretation of the phrase. We therefore address only the question of whether the phrase requires *instant* access, as Moore asserts.

We turn then to the extrinsic canons of statutory construction to determine the Legislature's intent. *State v. Velisek*, 986 N.W.2d 696, 701 (Minn. 2023). We may consider, among other things, "the mischief to be remedied," "the object to be attained" by

8

the legislation, and "the consequences of a particular interpretation." Minn. Stat. § 645.16; *see State v. Decker*, 916 N.W.2d 385, 387 (Minn. 2018).[2]

The mischief to be remedied by section 152.021, subdivision 2b(1), is clear from the plain language of the statute. Minn. Stat. § 645.16(3); *see State v. Serbus*, 957 N.W.2d 84, 89 (Minn. 2021) (determining the mischief to be remedied from the face of the statute). Subdivision 2b(1) imposes aggravated criminal liability on a person who possesses or sells particular amounts of certain controlled substances when that person also possesses a firearm "on [one's] person" or "within immediate reach." Minn. Stat. § 152.021, subd. 2b(1). Accordingly, the mischief that section 152.021, subdivision 2b(1) seeks to remedy is individuals possessing or selling drugs while also possessing a readily accessible firearm. And the object to be attained by the statute is to deter such behavior.

As the State illustrates through several hypothetical scenarios, the practical consequences of an interpretation requiring instant access would undermine those goals. For example, under Moore's suggested interpretation, if a person is driving with a backpack placed on the front passenger seat, a gun at the top of the contents inside the backpack could be "within immediate reach," while a gun at the bottom of the contents inside the backpack would not be. If we were to adopt Moore's interpretation, individuals could avoid guilt by merely moving a firearm to the bottom of a container or into a locked

---

[2]     Moore also argues that we should apply the rule of lenity to resolve the ambiguity in his favor. Because other canons of construction resolve the ambiguity, however, we need not turn to the rule of lenity. *See State v. Thonesavanh*, 904 N.W.2d 432, 440 (Minn. 2017) (stating that "the rule of lenity applies only after the other canons of construction have been exhausted and what remains is a grievously ambiguous statute").

container like a glove compartment. We cannot presume that the Legislature intended such a result. *See* Minn. Stat. § 645.17(1) (2022); *State v. Murphy*, 545 N.W.2d 909, 916 (Minn. 1996) ("It is well settled that courts may presume that the legislature does not intend an absurd result.").

By arguing that "within immediate reach" requires instant access, Moore asks us to establish a bright-line rule that a firearm in any sort of locked container cannot, as a matter of law, be "within immediate reach." For the reasons described above, we reject such a rule. Instead, we hold that "within immediate reach" does not require *instant* accessibility. We decline, however, to further define "immediate." To do so would simply replace one common and understandable term with another. Whether a firearm is "within immediate reach" is a question of fact, and we therefore leave it to juries and fact finders to apply that phrase to the specific circumstances of future cases. *See Stone*, 995 N.W.2d at 626 (concluding that whether "disassembled and incomplete shotgun parts constitute[] a firearm" is a "question of fact properly left to the jury").

### B.

We next examine the facts to determine whether the State presented sufficient evidence to support Moore's conviction. In deciding this question, we view the evidence in the light most favorable to the verdict and consider whether the evidence was sufficient to permit the jurors to reach the verdict that they did. *Powers*, 962 N.W.2d at 857–58.

Viewed in a manner most favorable to the verdict, the evidence presented at trial shows that Moore was physically able to reach the gun in the glove compartment. Officer Jelen testified that the glove compartment was physically "within reach" of a person sitting

10

in the driver's seat of the car. And there is no dispute that Moore was sitting in the driver's seat at the time of the traffic stop or that he had access to the ignition key to unlock the glove compartment. The evidence also demonstrates that Moore could access the gun in the time necessary to remove the key from the ignition, lean over, and unlock the glove compartment. Although the State did not present evidence as to precisely how long those actions would take, such a determination is well within a jury's common understanding. *Cf. State v. Brom*, 463 N.W.2d 758, 762 (Minn. 1990) (reasoning that a jury may infer intent from the circumstances of a particular crime by drawing on "sensory perceptions, life experiences, and common sense"). Given our determination that *instant* access is not required, a jury could reasonably find that the firearm was within Moore's immediate reach.

We therefore hold that the evidence was sufficient to allow the jury to find that the firearm in the locked glove compartment of Moore's car was "within immediate reach" under Minnesota Statutes section 152.021, subdivision 2b(1), because Moore was sitting in the driver's seat of the car, and the key to the locked glove compartment was in the ignition.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals.

Affirmed.

GAÏTAS, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

11